LUCILLE DONK, Appellant, v. THOMAS FRANCIS, CHARLES G. PERRY, EUGENE D. RUTH, JR., ET AL.—No. 38440.—174 S. W. (2d) 840.

Division One, November 1, 1943.

*Martin Rossen* for appellant.

*Oliver J. Miller* and *Lashly, Lashly, Miller & Clifford* for respondents.

GANTT, J.—Personal injury action under the res ipsa loquitur rule for damages in the sum of $15,000. Plaintiff claims injury by inhaling and breathing noxious fumes escaping from the central refrigerator compressor and a coal burning furnace located in the basement of the apartment building in which she resided. Defendant George Tilles Investment Company owned the building, and plaintiff alleged that defendant Francis-Perry-Ruth Real Estate Company [841] was the agent of the owner and, as such, managed the building.

The petition alleged that for a long period of time defendants negligently permitted the emission of carbon monoxide gas from the furnace and the waste products thereof, and negligently permitted the emission of sulphur dioxide fumes from the central refrigerating compressor; that as a result large quantities of gas and fumes entered the apartment occupied by plaintiff and that she was thereby permanently injured.

The answers were general denials. Judgment on a verdict for defendants and plaintiff appealed. There was evidence for plaintiff tending to show facts as follows:

Plaintiff and husband occupied a first floor apartment of a twelve family apartment building in St. Louis. They moved to the apartment June 1, 1940. The tenants are furnished refrigeration, heat, electricity and gas. At nine P. M. on February 3, 1941, plaintiff went to a small room in the apartment to rest pending the return of her husband, who was out for the evening. The window in the small room was open against a ventilator. She was awakened about eleven P. M. by a choking sensation. The room was full of gas with the odor of sulphur. At that time the husband arrived. He entered the apartment with a handkerchief over his nose. He then assisted the plaintiff from the apartment. On entering the hall they saw Mrs. Siegfried, a third floor tenant leaning out a front hall window. Plaintiff offered to prove as res gestae that Mrs. Siegfried said: ''The hall's full of gas up here.'' The court sustained defendants' objection to the statement as res gestae.

Mrs. Siegfried descended to the first floor and went with plaintiff to awaken Charles Rohrback, the janitor of the building who resided across the street. They were unable to awaken him. The janitor

in the adjacent apartment building awakened Rohrback who came to the apartment in a few minutes and went to the third floor and then to the basement. Plaintiff did not talk to him that night. The windows of the apartment were open for a while, but the gas did not entirely disappear. Some of the windows were open for the best part of the night. Both plaintiff and husband had a headache in the morning. They smelled sulphur and gas in the room. They were annoyed with gas the first day they moved to the building, and this condition existed during the time they occupied the apartment. They complained to the janitor, who did nothing. In July, August and September there was gas in the apartment, and when the furnace was started there was more gas. The apartment they occupied was above the furnace. Plaintiff also made complaints to Dorsey Ruth who collected the rent. The day after she was injured in the chest, back and kidneys by inhaling gas, the janitor moved a refrigerator.

Defendants inquired of plaintiff with reference to other claims she made for damages. Plaintiff objected. The objection was overruled. She then stated that prior to the present injury she made a claim for damages against the street car company and later made a claim for damages against the city. They were small claims and settled without litigation. The family doctor in the instant case also treated her for the other injuries, and her attorney in the instant case also represented her in the making and settlement of those claims. At this point the attorney for the defendants stated: "Your lawyer, doctor and you seem to work pretty well together". Plaintiff objected and charged counsel with attempting to prejudice the jury against the plaintiff and asked that he be reprimanded. Thereupon defendants' attorney admitted that he should not have made the remark. He apologized to the court and the jury. On the request of attorney for plaintiff, the court directed the jury to disregard said remark. Plaintiff's attorney then asked the court to declare a mistrial. The request was overruled.

At other times the husband also noticed gas in the apartment but never so much as on the night of February 3, 1941. He opened the windows but could not remove all the gas from the apartment. The next morning he awakened with a "splitting headache."

The man who moved plaintiff and husband from the apartment on the 12th of February, 1941, called to bid for the moving in the early part of February, 1941. At that time he noticed a sulphur odor in the apartment.

The family doctor diagnosed plaintiff's affliction as nephritis. It was his opinion that carbon dioxide caused the nephritis. It also was his opinion that sulphur dioxide could have caused the nephritis.

On January 2, 1941, the man who serviced the refrigeration in the building [842] tightened a loose belt. On February 1, 1941, he disconnected a refrigerator on the second floor by closing a valve.

on the gas line in the basement, pumping out the gas from the units on the line, cutting the pipes and flaring them and then again opening the valve in the basement. He moved the refrigerator from the apartment to install a refrigerator owned by a tenant moving to the apartment. Sulphur dioxide is used in this system of refrigeration. It is pumped through the system by the compressor in the basement. On February 4, 1941, he again went to the building and put sulphur dioxide into the system because five tenants were complaining of "frost back". This occurs when the gas is not under sufficient pressure. In other words, the system is short of sulphur dioxide. The refrigeration service record of the building follows:

"1-2-41—1 hour—Warren—belt loose on refrigerator—tightened fan—oiled motor—cleaned condensor—

"3-15-41—2 hours—Dickey—Apartment 1—removed and cleaned coil and strainer, put on Allen Set screws on motor and tightened.

"2-1-41—second floor, apartment 3—2½ hours—Dickey disconnected box and pumped out coil—Valve bad and couldn't close.—disconnected and plugged both lines.

"2-4-41—2½ Hours—Dickey—freezing 5 frost backs causing machine to run continually, added gas to eliminate frost backs."

Sulphur dioxide is used in most refrigeration units. It has an odor similar to rotten eggs and is easily detected. The service man had several employees in his shop and no injury resulted from breathing the gas, which is always in the air. On his visits to the building he found no evidence of leaks or escaping gas. On February 4, 1941, he went to the building and examined the plugs on the second floor. They were all soldered and no gas was escaping. Dirt will cause a leak. He, at no time, found a leak in the system.

The janitor served the building and another building for about six years. He served the building in which plaintiff resided fifteen minutes every two hours. At five P. M. he pulls the clinkers from the stoker to the front and when cool removes them to the outside ashpit. There was no trouble with the refrigerator. On the night in question he was at the building in five minutes after the complaint of gas. The refrigerating system was not running at the time. It defrosts on Monday nights. He did not see the plaintiff on the night in question. He saw Mrs. Siegfried on the third floor. There was no gas in the hall at that time. The window was open and he closed it. There was no gas in the basement. He never smelled gas from the refrigerator in that apartment at any time. The main tracks of the Wabash Railroad are in a cut just behind this apartment. They are located where the alley would be and he often saw smoke from the heavy freight engines "sucked up" into the halls of the building through open windows. He saw the plaintiff the next day. She said nothing to him about any injury from gas. He also saw her every morning when he removed the garbage from her porch. He also

saw her canary near the kitchen window the next day after the night in question. It was jumping around. Mrs. Siegfried still lives in the building.

There was evidence for the defendants tending to show facts as follows:

Dorsey Ruth had charge of the rent department for the defendant real estate company. He is acquainted with the plaintiff. Defendant real estate company knew nothing of plaintiff's claim until they received a letter from her lawyer dated February 5, 1941. He saw the plaintiff on February 7, 1941. She said nothing to him about an injury she sustained by inhaling gas. He talked to her several days before she moved. She was up and around and looked all right to him.

Mrs. Nutsell moved into the apartment above Mrs. Donk on January 30, 1941. She was in the kitchen of her apartment during the time the men were moving the refrigerator from her apartment. She smelled no gas on either Sunday night or Monday night and knew nothing of any disturbance on Monday night about gas. She never smelled any sharp stinging odor around the building. It was winter time, and she kept the windows closed except the bedroom window was open at night.

Mrs. Horwitz lived in an apartment on the first floor adjoining plaintiff's apartment. On the night of February 3, 1941, she smelled no gas or unusual smells in her apartment. She never smelled gas in the building.

The doctor called by the defendants examined the plaintiff on February 10, 1941. The examination revealed nothing wrong [843] with the plaintiff. There was nothing to suggest nephritis. The disease would display unmistakable physical signs. He had frequent cases involving the inhaling of gases and dust and is familiar with gases and dust encountered in industry. He is also familiar with sulphur dioxide. It has a disagreeable odor and for that reason is used because a leak can be quickly detected. Those working in it constantly become accustomed to the gas and have no reaction. Carbon dioxide has no smell. It cannot be detected, but you instantly detect sulphur dioxide. Plaintiff objected to the doctor testifying for the reason he had made no special study of chemistry and toxicology. The objection was overruled.

(1) Error is assigned on the refusal of the court to permit the plaintiff to testify as res gestae that Mrs. Siegfried stated that "the hall was full of gas up here." If the jury believed that Mrs. Siegfried was leaning out the window of the third floor and that she went with the plaintiff for the janitor, as testified by the plaintiff, it would find there was an unusual quantity of gas in the third floor hall. On the other hand, if the jury did not believe said testimony of the plaintiff, it would not have believed her testimony that Mrs. Siegfried

made the statement that "the hall's full of gas up here". It follows that the refusal to permit the plaintiff to so testify could not have been prejudicial.

(2) Error also is assigned on defendants' examination of plaintiff as to other claims. Defendants contend that the examination was intended to show that plaintiff claimed the same or similar injuries in making other claims. The record is not clear as to this contention. However, it shows that the defendants made no charge of fraud against the plaintiff with reference to other claims. They were settled without litigation and for small sums of money. The examination of the plaintiff with reference to said claims also could not have been prejudicial. The cases of Dent v. Monarch Life Ins. Co., 231 Mo. App. 283, 98 S. W. 123, and Dietz v. Southern Pac. Ry. Co., 28 S. W. 2d 395, cited by plaintiff, are not in point on the facts.

(3) Error also is assigned on the statement of defendants' attorney, at the close of the examination of plaintiff, as to other claims, that "your lawyer, doctor and you seem to work pretty well together."

On plaintiff's objection, said attorney admitted that he should not have made the remark. Furthermore, he apologized to the court and the jury. On Plaintiff's request, the court directed the jury to disregard the remark. There is nothing in the record to indicate that the jury may not have followed this direction of the court. We think the court did not abuse its discretion in refusing to declare a mistrial. The case of Haynes v. Town of Trenton, 108 Mo. 123, 18 S. W. 1003, cited by plaintiff, also is not in point on the facts.

(4) Error also is assigned on the court permitting the doctor called by the defendant to testify as a witness in the case. Plaintiff argues that because the doctor made no special study of chemistry and toxicology, he was not qualified to testify as to the injuries. He was a graduate of a medical school, connected with several hospitals, and on the staff of the St. Louis University Medical School. Furthermore, he was familiar with the gases and dust encountered in industry and frequently treated cases involving the inhalation of various gases and dust. There can be no doubt of the doctor's qualifications. The case of Ambruster v. Levitt Realty & Inv. Co., 341 Mo. 364, 374, 107 S. W. 2d 74, cited by plaintiff, is an authority against plaintiff on the question.

(5) Error also is assigned on an instruction which, in substance, follows:

The court instructs the jury that even though you find that gas did escape into plaintiff's apartment, yet, if you find that plaintiff was not injured by coming in contact with the gas, then you will find for defendants.

Plaintiff contends that the use of the words "coming in contact with" instead of the words "inhaling" and "breathing" withdrew from the consideration of the jury the act of inhaling and breathing

the gas which entered her apartment. We do not think so. Either external or internal injury may result from contact with gas. As used, the word "contact" covers both external and internal injury. Under the instruction, unless the jury found that plaintiff was neither externally nor internally injured, it could not find for the defendants. In other words, the instruction broadened the issues in favor of the plaintiff. Furthermore, she alleged only internal injury, and the evidence introduced by her tended to show only internal injury. The case having been tried on the theory of internal injury, the jury could [844] not have been misled by the instruction. Furthermore, plaintiff cannot consistently complain of this instruction, for an instruction given at her request did not limit the injuries to internal injuries.

The judgment should be affirmed. It is so ordered. All concur.