C. V. TEMPLE, Appellant,

v.

The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Respondent.

Edith S. TEMPLE, Administratrix of Estate of G. V. Dameron, Deceased, and Gordon B. Kell, Appellants,

v.

The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Respondent.

Staley McCORMICK, Appellant,

v.

The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Respondent.

Donald BROWN and Wesley Gill, Appellants,

v.

The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Respondent.

Edgar OLIPHANT and Alberta Oliphant, Appellants,

v.

The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Respondent.

Nos. 52601–52605.

Supreme Court of Missouri,
Division No. 2.

July 10, 1967.

Albert Thomson, Kansas City, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel, for appellants.

Sam D. Parker, Jack W. R. Headley, Kansas City, Dick B. Dale, Jr., Richmond, Lathrop, Righter, Gordon & Parker, Kansas City, of counsel, for respondent.

STOCKARD, Commissioner.

Plaintiffs have appealed from the judgment of the Circuit Court of Ray County, Missouri, entered in favor of defendant pursuant to jury verdict in plaintiffs' consolidated actions for damages based on the alleged violation by defendant of Section 389.660 RSMo 1959, V.A.M.S.

Plaintiffs' only contention on this appeal is that the trial court erred in giving at the request of defendant Instruction 6, a withdrawal instruction. Therefore, our statement of the evidence need not be as detailed as in other circumstances.

Plaintiffs are the owners or operators of farms located between Henrietta and Hardin, Missouri, on the north side of respondent's elevated roadbed. In each petition it was alleged that "the natural flow of drainage" on plaintiffs' land was from the north to the south, that defendant "did not have sufficient outlets in its right of way between Henrietta and Hardin, Missouri," and by reason of the insufficient outlets water was "caused to stand" on plaintiffs' farms and destroy or damage field crops. The evidence adduced by plaintiffs was to the effect that at the times alleged in the petition, which was during periods of heavy rains, water accumulated on plaintiffs' lands, and that the water north of defendant's roadbed was higher than the water on the south side. Plaintiffs' Exhibit 1 (identified and used by witnesses in their testimony but never received in evidence), a copy of which is incorporated into plaintiffs' brief, shows that west of but near to Hardin, the Crooked River flows under the defendant's roadbed at what is referred to as the Main Bridge, and then flows southward into the Missouri River. Nearby to the west is what is referred to as the Overflow Bridge with a levee west of it which diverts water flowing under that bridge southeastwardly into Crooked River. Westerly from Crooked River and to the north of the defendant's roadbed lies plaintiffs' lands. The exact distance is not shown on Plaintiffs' Exhibit 1, but eastward from Henrietta, and apparently eastward of plaintiff Temple's lands is what is called "Section 10 Ditch" over which defendant has a bridge. This ditch goes southward under defendant's roadbed and then runs eastwardly into Crooked River.

Section 389.660, upon which plaintiffs' actions are based, in its material parts provides as follows:

"It shall be the duty of every corporation * * * owning or operating any railroad * * * in this state, * * * to cause to be constructed and maintained suitable openings across and through the

right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains and watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad * * *."

In Instruction 3 it was submitted that the verdict was to be for plaintiffs if the jury believed:

"First, defendant, in the construction of its roadbed, rendered necessary the construction of openings across and through such roadbed to connect with ditches, drains and watercourses so as to afford outlet and to drain and carry off water, including surface water, and

"Second, defendant did not construct openings across and through its roadbed and connect same to ditch, drain or watercourse outlets in manner to sufficiently drain and carry off water, including surface water, and

"Third, as a direct result of the failure of defendant to construct openings and outlets through its roadbed and connect same with ditch, drain or watercourse, water was caused to stand upon lands of plaintiffs, and

"Fourth, growing and standing crops belonging to plaintiffs were damaged or destroyed. (Not in MAI)."

Instruction 4, given at the request of defendant, was a converse of Instruction 3. Plaintiffs do not challenge the correctness of that instruction. Instruction 6, which plaintiffs do challenge, is as follows:

"Instruction No. 6.

"The question of defendant being required to construct and maintain openings across and through its right of way and roadbed between the overflow bridge at Crooked River and the bridge at the Section 10 Ditch is withdrawn from your consideration. (Not in MAI)."

Plaintiffs challenge Instruction 6 on the ground that it is "prejudicially misleading and argumentative in violation of the Rules of the Supreme Court of Missouri adopting MAI." Plaintiffs' contention is that Supreme Court Rule 70.01(b), V.A.M.R. provides that instructions may be given authorizing a verdict for a defendant "upon finding the converse of any essential fact or element essential to a verdict for plaintiff," and Paragraph 29.01 MAI provides that verdict directing instructions of plaintiffs may be conversed in one of three ways, but that none of the authorized ways was used in Instruction 6. Plaintiffs then assert that Instruction 4, requested by defendant was a converse instruction (and we agree that it was), and that defendant was limited to one such instruction; that defendant was not entitled to have two instructions, that is, Instructions 4 and 6, on the question of liability; and for that reason there is no authority for Instruction 6.

Plaintiffs' contention is without merit. Instruction 6 is not a converse instruction, and it does not direct a verdict for defendant. It is a cautionary instruction by which a stated issue is withdrawn from the consideration of the jury in its determination of liability pursuant to the instructions submitting that issue. Paragraph 30 in MAI specifically authorizes the use of withdrawal instructions when appropriate. The committee comment quotes from Roberts v. Emerson Electric Manufacturing Co., Mo., 362 S.W.2d 579, in reference to the use of withdrawal instructions, as follows: " 'It is not only the office of instructions to inform the jury as to the law of the issues raised, but, where the evidence is of a character as might easily lead to the raising of a false issue, the court ought to guard against such an issue by appropriate instructions.' "

Plaintiffs cite Rice v. Jefferson City Bridge & Transit Co., Mo., 216 S.W. 746,

and Mahaney v. Kansas City, Clay County & St. Joseph A. T. Co., 329 Mo. 793, 46 S.W.2d 817. Both of these cases predate the adoption of MAI, and therefore do not support plaintiffs' contention that withdrawal instructions are not now authorized. In each case it was held that a withdrawal instruction was erroneous, not because a withdrawal instruction as such was not authorized, but because the issue purportedly withdrawn was, under the facts of each particular case, an issue to be determined by the jury. Instruction 6 in this case was a withdrawal instruction, but it was not erroneous for that reason alone. Whether it was proper under the circumstances of this case is the question to which we now turn.

■ In the construction of Section 389.-660, "the courts have repeatedly held there is no duty on the railroad to let water through its embankment *unless* there exists there a connecting ditch, drain or watercourse below the embankment into which such water may flow." Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 19 A.L.R.2d 950. See also Atchison, Topeka & Santa Fe Ry. Co. v. Taylor, D.C., 87 F.Supp. 313; Vollrath v. Wabash R. Co., D.C., 65 F.Supp. 766; Grimes v. St. Louis & S. W. Ry. Co., 184 Mo.App. 117, 168 S.W. 317; Harris v. St. Louis-San Francisco R. Co., 224 Mo.App. 455, 27 S.W.2d 1072; Slinkard v. Missouri Pac. R. Co., Mo.App., 294 S.W. 446. The natural drainway constituting Crooked River was bridged by what was referred to as the Main Bridge, and the overflow of that drainway was channeled through defendant's roadbed by the Overflow Bridge. Farther west there was a bridge over Section 10 Ditch. Whether or not the terms of Section 389.660 required defendant to establish other and additional openings in its roadbed between the Overflow Bridge and the bridge at Section 10 Ditch depended upon two factors. First, whether the existing openings afforded a "sufficient outlet to drain and carry off the water, including surface water," and second, whether there existed a connecting ditch, drain or watercourse below defendant's roadbed located on defendant's right of way into which the water could flow. This latter requirement has been held to be necessary because "The law places upon a railroad no duty (and grants a railroad no permission) to enter upon any servient land to construct or to enlarge any existing ditch, drain or watercourse to increase its water carrying capacity," Smithpeter v. Wabash R. Co., supra, and a railroad may not make an opening in its roadbed and discharge accumulated surface water on an adjacent proprietor, when no ditch, drain or watercourse exists to carry it away without incurring liability for such action. Vollrath v. Wabash R. Co., supra; Grimes v. St. Louis & S. W. Ry. Co., supra. We are unable to find any evidence in the record that in the area between the Overflow Bridge and the bridge at Section 10 Ditch there were any drains, ditches, or watercourses leading away from defendant's roadbed into which water could flow or be channeled. Plaintiffs do not contend there was any such evidence. They certainly point out none to us. Defendant-respondent asserts in its brief that there was no such evidence, and to that assertion plaintiffs make no reply. Two of defendant's witnesses testified positively that no such drains, ditches, or watercourses existed.

■ By Instruction 3 plaintiffs were authorized to obtain a verdict if the jury believed that defendant "did not construct openings across and through its roadbed and connect same to ditch, drain or watercourse outlets in manner to sufficiently drain and carry off water, including surface water." However, in view of the circumstances of this case as established by the undisputed evidence, Section 389.660 did not require defendant to construct such openings between the Overflow Bridge and the bridge over the Section 10 Ditch. For that reason, at the request of defendant, by Instruction 6 the trial court withdrew from the consideration of the jury in its determination of whether plaintiffs were entitled to a verdict under Instruction 3, the issue of

whether defendant was required to construct and maintain openings across and through its right of way and roadbed in that area between the Overflow Bridge and the bridge over Section 10 Ditch. This not only was proper but was necessary, in view of the submission of plaintiff and the uncontradicted evidence, in order to prevent the likelihood of a false issue before the jury.

 Plaintiffs argue that Instruction 6 is erroneous because it "told the jury the [defendant] did not have to put in openings without telling the jury that if it did not put in openings, then it had to put in lateral ditches to lead the water to adequate openings nearby to carry it off." Section 389.660 does require the construction and maintenance of "suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains and watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water." Admittedly, if supported by evidence, plaintiffs could have based the issue of defendant's liability on the failure to construct such ditches and drains. But, there is no evidence of the absence of such ditches and drains or their insufficiency. In their pleadings plaintiffs did not allege that defendant had failed to construct sufficient lateral ditches and drains. Instruction 3 submitting plaintiffs' theory of defendant's liability makes no mention whatever of such ditches and drains. Plaintiffs selected the basis of their submission, and the defendant should not be required to negative possible grounds of liability not an issue in the case by reason of plaintiffs' choice of their theory of liability or by reason of nonsupport in the evidence.

We conclude that Instruction 6 is not erroneous for the reasons asserted.

The judgment in each case is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.