Avis V. McBEE and Willis R. McBee, Appellants,

v.

Robert James SCHLUPBACH, Respondent.

No. KCD 26891.

Missouri Court of Appeals, Kansas City District.

Sept. 2, 1975.

Motion for Rehearing and/or Transfer Denied Oct. 6, 1975.

Application to Transfer Denied Dec. 8, 1975.

*ton,* 518 S.W.2d 292, 299–300[3, 5] (Mo.banc 1975); see also the notes on use for M.A.I.–C.R. 6.02, 6.06, 6.08 (effective March 8, 1975).

Oswald & Cottey, Thomas R. Oswald, Kirksville, for appellants.

Collins & Grimm, David Collins, Macon, for respondent.

Before SWOFFORD, P. J., and ROBERT R. WELBORN and ANDREW J. HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action for damages for personal injuries received in automobile collision. Avis V. McBee sought $30,000 damages for her bodily injuries. A jury returned a verdict in her favor for $1,500. Her husband sought $13,000 for his wife's medical expenses and loss of her services. The jury verdict in his favor was for $2,500. Plaintiffs' motion for new trial was overruled and they appealed.

Appellants' brief states their claim on this appeal as follows:

"This appeal is concerned with alleged error in the giving of Instruction No. 9 prepared and tendered by Respondent and which relates to the issue of damages. Appellants contend that this instruction was error, the giving of which established a presumption of prejudicial error which may have tended to influence the amount of the verdict, and therefore Appellants are entitled to a new trial on the issue of damages even though the verdict might not have been, as a matter of law, inadequate."

Their sole assignment of error is that the giving of Instruction No. 9 was prejudicial error.

As a preliminary matter, respondent urges that appellants' allegation of error should not be considered because appellants have not briefed the alleged inadequacy of the verdict. Respondent's principal reliance is upon *Thomas v. Jones*, 409 S.W.2d 131 (Mo.1966). In that case the question presented was whether or not a plaintiff who did rely unsuccessfully upon inadequacy of the verdict as a matter of law might nevertheless have judgment on a verdict in his favor set aside because of errors relat-

ing to the trial of the issue of damages as distinguished from liability. The court concluded that such error could be the basis of a new trial at plaintiff's request and granted a new trial on the issue of damages only. That case does not hold that such relief may be granted only in a case where plaintiff contends that the verdict is the result of bias or prejudice or that it is shockingly inadequate. To impose such a condition upon a plaintiff's right to complain of trial error having a demonstrable connection with the amount of the verdict in his favor would be without reason and would require a plaintiff-appellant in a case such as this to brief an issue not necessary to be determined in affording plaintiff relief. *Senter v. Ferguson*, 486 S.W.2d 644 (Mo.App.1972). The respondent's contention is without merit.

This cause of action arose out of a collision which occurred in Downing, Missouri, on September 3, 1949, shortly after 9:00 P.M. Plaintiff Avis McBee was driving a 1964 Chevrolet station wagon, with her six children as passengers, west on Route 136. She stopped because of oncoming traffic, preliminary to making a left turn into Route V. An auto behind her, driven by Steven Kirkpatrick, stopped about a vehicle's length behind the McBee auto. When Kirkpatrick stopped, he looked into his rear view mirror and saw an auto driven by Robert James Schlupbach turning into Route 136 about a block away. Kirkpatrick looked to see whether the McBee car had made its turn. When he did so he heard brakes "squealing" and he saw the Schlupbach car sliding toward his auto. Schlupbach's car struck the Kirkpatrick auto and knocked it into the McBee vehicle.

The impact threw Mrs. McBee forward and her chest hit the horn and her right knee the dashboard. She remained at the scene of the collision for about two hours and then drove her auto to her home, 1½ miles west of Downing. The McBee auto received slight damage to the rear bumper and a trailer hitch.

When Mrs. McBee got home, her neck, low back, chest, left shoulder and right knee were causing her pain. She attempted to contact her regular physician, Dr. Eleanor Roberts, D.O., the next day, but was unsuccessful and saw Doctor Roberts at her office the following day. Doctor Roberts sent her to the Kirksville Osteopathic Hospital for X-rays, which showed no fracture or dislocation of the right knee or of the bony elements in the neck or low lumbar area. The X-ray report included a finding of limited motion in the cervical area. According to Doctor Roberts, Mrs. McBee complained that she "hurt all over."

Then followed a series of visits by Mrs. McBee to Doctor Roberts until February, 1970, when she sent Mrs. McBee to see Dr. Wayne R. English, D.O., specializing in rehabilitation medicine at Kirksville Osteopathic Hospital. Doctor Roberts testified that during the visits to her she observed "quite a bit of muscle tension within the cervical area, the neck, the upper thoracic area." She gave osteopathic treatment and analgesic drugs which Mrs. McBee could not tolerate. Muscle spasms developed in the cervical area, with left arm involvement, including weakness in the left hand and restricted motion in the shoulder joint. She also had low back trouble and trouble with her right knee.

When Doctor English first saw Mrs. McBee in February, 1970, she was complaining of pain in the cervical-dorsal area, mainly the left side, pain in the left anterior thorax, pain in the right knee and pain in the lower back referred to the right hip. He examined the previously taken X-rays and made a diagnosis of "acute cervical-dorsal strain with left shoulder girdle myofascitis." Doctor English saw plaintiff about six times and she received physical therapy in the rehabilitation department of the hospital throughout the month of February.

Mrs. McBee then returned to Doctor Roberts for three times a week treatment for several weeks. She continued to see Doctor Roberts until March, 1971. At that time, she still had weakness in her left hand and

restricted motion in her left shoulder. The right knee would not lie flat. Doctor Roberts was of the opinion that she had permanent restriction of the cervical area, resulting in impaired use of the left shoulder and arm. She also thought she had a permanent injury to her right knee and the upper thoracic area.

In March, 1971, Doctor Roberts returned Mrs. McBee to Doctor English's care. At Doctor English's recommendation Mrs. McBee was hospitalized at Kirksville Osteopathic Hospital from March 22, 1971 to April 3, 1971. Following her discharge from the hospital Mrs. McBee received a series of 48 to 50 treatments, under Doctor English's supervision, as an out-patient, continuing until the time of the trial in June, 1973.

At the trial Mrs. McBee testified that she continued to have pain in the back of her neck, down her left shoulder, in her lower back and down her right hip into her knee. She testified that she had no grip in her left hand and couldn't raise her left arm higher than her shoulder.

Doctor English testified that Mrs. McBee would require treatment the rest of her life for her condition. He attributed her complaints to nerve involvement following spinal muscle and ligament damage sustained in the collision.

At the time of trial Mrs. McBee's medical expenses amounted to more than $2,400.

Defendant had Mrs. McBee examined May 10, 1973 by Dr. Lucius C. Hollister, M.D., a graduate of Northwestern University Medical School and a board certified orthopedic surgeon who had practiced that specialty for 17 years at Quincy, Illinois. Respondent summarizes Doctor Hollister's testimony of his observations and conclusions, based upon such examination, as follows:

"Dr. Hollister's examination of Mrs. McBee included measuring the circumference of both of her arms. He found no evidence of atrophy and that part of the examination did not indicate there has been any limitation of motion. He examined her left shoulder. To him it seemed that her restriction was voluntary. In his examination he could not find any cause, reason or explanation for this restriction in her left shoulder. He could not find any explanation or cause for why she could not lift her left elbow up to the same level as the right. In examining her left elbow he could find no explanation as to why she was unable to straighten it out. His examination of the forearms and wrists did not show anything significant. He tested the strength of her grasp by a device called a dynamometer. In her right hand she measured 140 and in the left she only moved the dial to 10. He found no explanation for this in view of the fact that she had no atrophy of her left forearm.

"He measured her leg at six different levels. Her right leg was very slightly larger than her left at the ankle, calf and knee but her right thigh was smaller than her left. The doctor did not have an explanation for this. Dr. Hollister also testified that the x-rays he had taken on May 10, 1973 showed no evidence of soft tissue calcification and that if she had sustained serious damages to a ligament or muscle this would have been present."

The case was submitted to the jury on a charge of negligence in failing to keep a careful lookout on both counts. The court gave a converse instruction in the form of MAI No. 33.02(5), as follows:

### "INSTRUCTION NO. 5

"Your verdict must be for the defendant and against both Avis V. McBee and Willis R. McBee if you do not believe that Defendant was negligent as submitted in Instructions Nos. 3 & 4, and that plaintiff Avis V. McBee sustained damage as a direct result thereof."

Damage instructions, conforming to MAI No. 4.01, were given on the claim of each of the plaintiffs.

Then followed Instruction No. 9, offered by the defendant and reading as follows:

"You are instructed by the Court that Defendant is not liable to either of the Plaintiffs for injuries or expenses which you do not believe were the direct result of Defendant's negligence."

The jury returned a verdict for Avis McBee of $1,500 on Count I. On Count II its verdict was for $2,500 for Willis McBee. Plaintiffs' motion for new trial was overruled and they appealed.

On this appeal, appellants contend that the trial court erred in giving Instruction No. 9 because it erroneously sought to modify, enlarge, change and explain appellants' damage instructions and respondent's converse instruction; because it amounted to a second converse, in violation of MAI No. 33.01; because it violates Rule 70.01(b) requiring the use of an appropriate applicable MAI instruction to the exclusion of any other on the subject; because it "argued the Respondent's defense on damages by forcefully hammering home and overemphasizing his contention that Appellants were making a claim for injuries and expenses not the result of Defendant's negligence"; and because it argumentatively substituted the evidentiary facts "injuries and expenses" for the MAI approved language "damages."

Respondent's position is that Instruction No. 9 was a "cautionary" instruction, authorized by the "Notes on Use" under MAI No. 2.01, and given as an exercise of discretion by the trial court, "which discretion was obviously not abused and hence should not be interfered with on appeal," and that appellants' complaints against it are without merit.

In *Houston v. Northup*, 460 S.W.2d 572, 575–576 (Mo. banc 1970), the court stated:

"Implicit in a scheme of approved pattern instructions such as MAI is the central idea that such instructions do not require further clarification or amplification. They submit ultimate issues and do so adequately. Consequently, we have held in cases such as *Brown v. St. Louis Public Service Co.*, Mo., 421 S.W.2d 255, and *Murphy v. Land*, Mo., 420 S.W.2d 505, that change in the prescribed language other than the authorized modifications is not permissible and constitutes error. Necessarily, it also follows that it is not permissible to modify or enlarge or change or explain MAI instructions by separate instructions not provided for or authorized in MAI. To permit modification, clarification or improvement by separate instructions would be just as objectionable as doing so within the body of the prescribed instructions."

■ There was a single predominant issue in this case, i. e., the extent to which plaintiff Avis McBee's injuries and complaints were related to the automobile collision in which she was involved. There was, of course, the preliminary question of liability, but that was not the hotly contested issue in the case. The jury was instructed in accordance with MAI as to what damages the plaintiffs were entitled to, once the question of liability was resolved. Instruction No. 7 informed the jury that plaintiff Avis McBee was entitled to damages they believed she sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in evidence. Instruction No. 8 informed the jury that Willis McBee was entitled to such damage as he sustained as a direct result of the injury to Avis V. McBee. These instructions adequately submitted the issue and there was no necessity for any further explanation of the damages to which plaintiffs were entitled. Instruction No. 9 was an attempt, not authorized by MAI, to provide further explanation of the authorized damage instructions. As such, it is contrary to the scheme of MAI and presumptively prejudicial. *Brown v. St. Louis Public Service Company*, 421 S.W.2d 255, 259 (Mo. banc 1967); *Senter v. Ferguson*, 486 S.W.2d 644, 646–647[1] (Mo.App.1972).

■ Respondent's attempt to justify the instruction as a "cautionary" instruction, within the Notes on Use under MAI No. 2.01, must be rejected. No such instruction was needed to direct the jury's attention to

the vital issue in the case or to prevent their being diverted from that issue. The issue was clearly drawn and fully and adequately instructed upon. The cloak of "cautionary instruction" may not be relied upon to justify an obvious violation of the now well-established rules for the use of MAI. See *Brown v. Public Service Company, Houston v. Northup, Senter v. Ferguson*, supra.

As respondent points out, the discretionary power of the trial court to give cautionary instructions was not suggested to the appellate court in either *Houston* or *Senter*. However, there is no suggestion in either of those cases that the mere adoption of a label would have avoided the error found in those cases.

Respondent has cited *Temple v. Atchison, Topeka and Santa Fe R. Co.*, Mo., 417 S.W.2d 97, 99, in which, he says, a cautionary instruction was approved under MAI practice. The opinion in that case does refer to the instruction as a "cautionary instruction." 417 S.W.2d 99. However, the instruction in that case was obviously a withdrawal instruction, as the writer of the opinion subsequently tacitly acknowledged. *State ex rel. State Highway Commission v. Flick*, 427 S.W.2d 469, 471[3] (Mo.1968). In this case, respondent tendered an instruction withdrawing from the jury's consideration evidence of disability of Avis McBee's left shoulder, left arm and left hand. The instruction was refused. Respondent does not argue here that he was entitled to that instruction.

The applicable MAI instruction adequately presented to the jury the issues of liability and damages and the giving of Instruction No. 9 was error. There being no contention that the error was not prejudicial, the judgment must be reversed and the cause remanded for new trial on the issue of damages only. Rule 84.14.

Reversed and remanded for new trial on issue of damages only.

All concur.