James C. BAIR, Plaintiff-Respondent,

v.

**ST. LOUIS–SAN FRANCISCO
RAILWAY COMPANY,**
Defendant-Appellant.

No. 64246.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

On Rehearing March 29, 1983.

Gerald D. Morris, St. Louis, for defendant-appellant.

C. Marshall Friedman, St. Louis, for plaintiff-respondent.

BLACKMAR, Judge.

Respondent James Bair brought suit for damages in the Circuit Court of the City of St. Louis pursuant to the Federal Employers' Liability Act against appellant St. Louis-San Francisco Railway Company (Frisco). Bair claimed that he had sustained injuries while working as a journeyman carman for Frisco. The jury returned a verdict in Bair's favor for $313,500, and judgment was entered on the verdict. The Missouri Court of Appeals, Eastern District, affirmed. We transferred the case, primarily to resolve the question of retroactivity of a decision of the Supreme Court of the United States regarding income tax effects of damage awards in F.E.L.A. cases. We decide the case as on original appeal, and affirm the judgment. We make use of substantial portions of the opinion of Judge Simon, without quotation marks.

On appeal Frisco raises ten points, alleging that the trial court erred in: (1) refusing to allow Frisco to ask Bair on cross-examination if he was aware that any recovery on his claim would not be subject to federal income tax; (2) refusing to instruct the jury that Bair would not have to pay federal income tax on any jury award he might receive; (3) refusing to submit to the jury a "present value" instruction; (4) submitting to the jury MAI No. 8.02 as the damage instruction; (5) refusing to submit to the jury an instruction pertaining to speculative damages; (6) submitting to the

jury MAI No. 24.01 as the verdict director; (7) failing to grant a mistrial after Bair testified that he had a family to support; (8) failing to grant a mistrial after Bair's attorney made unfavorable comments about Frisco's examining physician; (9) failing to grant a new trial after Bair's attorney made unfavorable comments during his closing argument about Frisco's attorney; (10) failing to grant a new trial on the ground that the damages were excessive.

## I.

We believe that all of appellant's points except (1), (2) and (10) were appropriately disposed of in the Court of Appeals opinion.

At the time Bair sustained his injuries he was 30 years old. He had started working for Frisco in its Springfield, Missouri train yard after graduating from high school in 1960. Bair began as a carman apprentice; he was promoted to the position of journeyman carman approximately four years later. Carmen are skilled workers who build, repair, and service various types of railroad cars and equipment. Bair testified that during the course of his employment with Frisco he had learned every phase of the carman's craft.

The evidence adduced at trial showed that on January 18, 1973 Bair was working in Frisco's freight car shop repairing damaged freight cars. Bair and several coworkers were assigned the job of working on a damaged boxcar in the process of being rebuilt. One end of the boxcar had been pushed inward one to two feet. Bair's supervisor, Michael Beavers, told the workers to straighten the end using a large air-powered jack and pole. This method of straightening the end required that one of the workers go inside the boxcar with the jack and a six to ten foot pole. Basically, the idea was to use the jack to push the pole against the indentations on the end of the boxcar. The jack, weighing between three and four hundred pounds, had wheels on its bottom but because it was wider than the centersill, it had to be positioned on its side by hand. Once the jack was in place it would be tied to the centersill and braced so that the jack would not move when pressure was applied to the indentations. As the pole was pushed against the end of the boxcar it was necessary to reposition the jack.

Bair went into the boxcar with the three to four hundred pound jack and a six to ten foot oak pole. Both the boxcar's flooring and the steel "stringers" on which the flooring sits had been removed. The only surface on which Bair could stand inside the boxcar was the centersill, running lengthwise down the middle of the car. The centersill is approximately fourteen or fifteen inches wide. There is a two inch flange on each side of the centersill approximately twelve or thirteen inches below the centersill's surface.

Before Bair went inside the boxcar the workers requested some plywood be placed in the car so that there would be more room to stand. The request was denied. As a result there was room for only one man inside the car to reposition the jack. Bair had moved the jack twice before he was injured. At trial Bair described his attempt to move the jack for a third time:

[a]s I was tugging on the jack—of course, it's a very strenuous (sic) process, just brute strength—and I pulled on it and something popped or just—I got a severe pain in my back. It just stopped me. And I just let go and got up and crawled. I couldn't get up. The pain was so severe that it scared me.

Bair was first taken to the shop's office then to the office of Dr. Carl Schroff, the Frisco doctor. Dr. Schroff examined Bair and took X-rays of Bair's lower back. Dr. Schroff gave Bair a muscle relaxer and told him to return the next day, Friday. When he returned to Dr. Schroff's office, Bair was still in pain. Dr. Schroff advised Bair to rest over the weekend and told him that he could return to light duty on Monday. Bair did return to work, but the pain in his back continued.

Soon after Bair returned to work he transferred to the air brake shop because it required less heavy lifting. Bair's back, however, did not improve; the pain contin-

ued. During the next two years Bair went to several doctors. In October of 1975 Bair transferred again, taking a job as an inspector in the train yards. Two days later on October 29, 1975, Bair's doctor put him in the hospital for 11 days for tests and therapy. Bair has not returned to work for Frisco. In January of 1975 Bair again entered the hospital for more treatment. Bair suffers from a degenerative disc disease. Bair's present doctor, an orthopedic surgeon, Dr. Ben Harmon, testified by deposition that Bair was not capable of returning to work. Although Bair tried to return to work with his father as a painter and remodeler, he was unable to perform due to his back problems. Bair stated that in 1976 he had no earnings. In 1977 he earned $1,700. In 1978 Bair obtained a real estate license and earned $4,500.

■ Several of the points advanced in the brief and renewed here relate to errors in instruction, in which it is argued that MAI does not furnish an appropriate guide. We are always willing to entertain claims of legal error in MAI instructions, including, in F.E.L.A. cases, claims that instructions are contrary to governing federal law. Most of the points here advanced, however, were disposed of in our opinion in *Dunn v. St. Louis-San Francisco Ry. Co.,* 621 S.W.2d 245 (Mo. banc 1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982). We adhere to that opinion, and to the general MAI plan of instruction, which seeks to simplify and balance the instruction process. There are instructions which are abstractly correct in law and which are commonly given in some jurisdictions, but which are not included in the MAI plan. The absence of an instruction does not prevent counsel from introducing evidence or making argument.

■ Frisco's third point is that the trial judge erred in refusing to submit to the jury a present value instruction. In *Dunn,* at p. 253, we dealt with a very similar issue and held that a present value instruction was not appropriate under MAI. We are not persuaded that federal law requires the instruction. Frisco's third point is denied.

■ Frisco's fourth point is that the trial court erred in submitting MAI No. 8.02 as the damage instruction. Frisco assigns two reasons for its contention. First, it contends that the instruction failed to limit the jury's consideration to the occurrence of January 18, 1973. Second, Frisco contends MAI No. 8.02 misstates the applicable law of damages for F.E.L.A. cases. Neither of these contentions has merit.

Under MAI when there is more than one occurrence, the jury must be instructed to consider only the occurrence for which defendant is liable. In this case Frisco contends the trial court erred because the damage instruction did not limit the jury's consideration to the occurrence of January 18, 1973. There was some evidence at trial that Bair had sustained several minor injuries prior to that date. However, the extensive medical testimony indicated that the accident sustained January 18, 1973 caused the complained of injuries to Bair's back. *See Weinbauer v. Berberich,* 610 S.W.2d 674, 680 (Mo.App.1980); *Gant v. Scott,* 419 S.W.2d 262 (Mo.App.1967). Thus, the trial court was not required to modify, nor was Frisco prejudiced by, the damage instruction. The trial court correctly submitted MAI No. 8.02. This instruction is mandatory to the exclusion of all others under the MAI. *Griffith v. St. Louis-San Francisco Ry. Co.,* 559 S.W.2d 278, 280 (Mo.App.1977), *cert. denied,* 436 U.S. 926, 98 S.Ct. 2821, 56 L.Ed.2d 769 (1978). We do not believe that the jury was confused as to the incident involved.

■ Frisco's fifth point is that the trial court erred in refusing to submit a speculative damage instruction. Frisco's tendered instruction was not contained in MAI and "[a]s such it [was] contrary to the scheme of MAI and presumptively prejudicial." *McBee v. Schlupbach,* 529 S.W.2d 435, 439 (Mo.App.1975). See *Dunn, supra* at 253.

■ Frisco's sixth point is that the trial court erred in submitting the verdict director, MAI No. 24.01. The submission of MAI No. 24.01 was proper, and in fact required under Supreme Court Rule No.

70.02(b). *See White v. St. Louis-San Francisco Ry. Co.,* 602 S.W.2d 748, 754 (Mo.App. 1980). *See also* the extensive Committee Comment to MAI No. 24.01. This point is denied.

■ Frisco's seventh point on appeal is that the trial court erred in refusing Frisco's request to grant a mistrial after Bair volunteered, on direct examination, that he had a family to support.[1] The court instructed the jury to disregard Bair's remark. We hold the trial court acted well within the bounds of its discretion.

The situation in the present case is analogous to that in *Brown v. Parker,* 375 S.W.2d 594 (Mo.App.1964). In both cases the testimony regarding the plaintiffs' families was contained in an unresponsive answer on direct examination. In *Brown* the Court of Appeals held:

> [W]here improper evidence comes into the case through a voluntary statement of a witness, a mistrial is not a matter of right but is a question calling for the exercise of a sound discretion by the trial court, and in the absence of an abuse of that discretion we cannot interfere.

*Brown, supra* at 601. The trial court's refusal to grant a mistrial was not an abuse of discretion as evidenced by the fact that Bair had previously testified without objection that he had a wife and family. Moreover, later in the trial Dr. Harmon, under cross-examination by Frisco, alluded to Bair's sons. Based on these factors we hold that the trial court did not abuse its discretion in refusing to grant a mistrial.

■ Frisco's eighth point concerns statements made by Bair's attorney about Frisco's examining physician, Dr. Mell. The comments were made during Frisco's cross-examination of Dr. Winer, a medical witness for Bair. By consent of all parties, Dr. Mell had already testified. Frisco's attorney questioned Dr. Winer about the frequency that he sees patients at the request of Bair's attorney. At this point, Bair's

attorney said that Dr. Winer did not see as many people for him as Dr. Mell sees for Frisco. Bair's attorney later apologized in open court for his remark. Both comments were within the hearing of the jury. The trial court rightly instructed the jury to disregard both comments. Frisco contends that Bair's attorney, by his remarks, intended to go beyond the record to cast aspersions on Dr. Mell and that the trial court erred in not granting its request for a mistrial. We do not think the trial court abused its discretion in refusing Frisco's request.

The trial court's decision whether to declare a mistrial must be based on the nature of the comments made and the circumstances in which the comments were made. *Compare Dunn v. Terminal R. Ass'n,* 285 S.W.2d 701 (Mo.1956) *with Donk v. Francis,* 351 Mo. 1053, 174 S.W.2d 840 (1943). The *Donk* case is especially analogous to the present case. In *Donk* defendant's attorney commented to plaintiff, "your lawyer, doctor and you seem to work pretty well together." *Id.* 174 S.W.2d at 843. Defendant's attorney apologized for this remark and the trial court directed the jury to disregard the remark. This Court held the trial court did not abuse its discretion in refusing to declare a mistrial. In the case at bar remarks by Bair's attorney, while improper, did not rise to the level as that made in *Donk.* Under the circumstances, we cannot say the trial court abused its discretion. Frisco's eighth point is denied.

■ Frisco's ninth point is that the trial court erred in refusing to grant a new trial because of a comment made by Bair's attorney in closing argument. Bair's attorney began his closing argument:

> Ladies and gentlemen, you have heard an argument which, in my opinion, just about comes about as close as you could get to the bottom, to the pits. Mr. Morris has told you about all these cases he's

---

1. The exchange between counsel and Bair went as follows:

   "Q Of what importance to you has been your training in your profession, your career?

A Well, I spent the biggest part of my life working for the railroad and that's my livelihood. I don't have any more. I have a family to support."

tried against me. And I'll guarantee you right here if you were to read the transcripts of those cases that are typed up by this court reporter, you will read the same argument in every single case he tries, that he gave to you right here today. It is a script. Every single case is the worse case he's ever seen; in every single case there's nothing to believe; in every single case, the doctors are confused, and every single case you should blame everything [and] anyone but the railroad.

We do not feel that the trial court abused its discretion in refusing to grant a new trial. Frisco's attorney, in closing argument, had gone beyond the record and discussed his prior experiences. In considering whether to grant a new trial, the trial court considered both arguments together. *Clark v. Mize*, 525 S.W.2d 635, 637 (Mo.App.1975). Considering the liberal attitude toward closing argument, the trial court's considerable discretion and the fact that both attorneys brought in personal experiences in closing argument, we conclude that the trial court was not in error in refusing to grant a new trial.

### II.

The defendant's first two points complain of the court's refusal to allow evidence of or to instruct the jury on the fact that any award of damages would not be subject to income tax. Such an instruction is now required in F.E.L.A. cases by *Norfolk & Western Ry. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). We held in *Dunn v. St. Louis-San Francisco Ry.*, *supra*, that *Liepelt* was not to be applied retroactively and the Court of Appeals considered itself bound by that decision even though the Supreme Court in the meantime had decided *Gulf Offshore Co. v. Mobil Oil Company*, 453 U.S. 473, 486 fn. 16, 101 S.Ct. 2870, 2879 fn. 16, 69 L.Ed.2d 784 (1981), in which the Court characterized the claim

that *Liepelt* was not retroactive as "insubstantial."

■ The *Gulf Offshore* holding is clear enough to us. *Liepelt* must be applied retroactively if an instruction on the tax consequences of an award has been requested. This does not mean, however, that a total or partial new trial must be granted in every case tried before *Liepelt*, simply because a *Liepelt*-type instruction was requested and was not given. It is appropriate for the lower courts, state and federal, to examine the verdicts rendered to determine whether the absence of an instruction on income tax effects was prejudicial.

In *Flanigan v. Burlington Northern, Inc.*, 632 F.2d 880 (8th Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981), the court held that *Liepelt* was retroactive, but concluded that the verdict was supported by the evidence and that there was no indication that the jury had inflated its award because of erroneous assumptions about tax consequences. The court pointed to the particular circumstances of *Liepelt*, a death case, and noted that the amount of the *Liepelt* verdict was well in excess of the figures produced by objective analysis. *Id.* at 890. Had the Supreme Court felt that new trials in pending cases were automatic, following *Liepelt*, it is probable that it would have vacated the *Flanigan* judgment, as well as those in *Dunn* and in *Ingle v. Illinois Central Gulf Ry. Co.*, 608 S.W.2d 76 (Mo.App.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981).[2]

Appellant argues that the great weight of authority is contrary to *Flanigan, Dunn* and *Ingle*. We nevertheless elect to follow the *Flanigan* model. A new trial is burdensome to the parties and to the judicial system. This is especially so when the claim arose ten years ago. We believe that we have not only the power but the positive duty to examine the verdict to determine whether retrial is necessary.

**2.** Plaintiff argues that the ultimate disposition of *Gulf Offshore Company v. Mobil Oil Corporation*, 628 S.W.2d 171 (Tex.App.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), affirming a verdict for the plaintiff

even though a *Liepelt* instruction had not been given, is significant. This is not so. The case was not a F.E.L.A. case but rather involved another federal statute, and the Texas court held that the statute adopted state law.

■ The record and the briefs before us show substantial disagreement as to the cause and extent of the plaintiff's difficulties. The plaintiff's evidence, which the jury obviously accepted, showed that his earnings were substantially reduced following the accident and that, after trying to do some railroad jobs, he was able to earn very little. His ability to move was severely restricted and he suffered continuing pain. The jury could well have believed that his earning capacity had been permanently impaired. Defendant argues that the award could be expected to yield an annual income of approximately $25,000, which is more than the plaintiff could be expected to earn if he had been able to continue with his railroad employment. There are, however, other proper components of the verdict, including pain and suffering. *See Flanigan* at 890. Neither the trial court nor the Court of Appeals was disturbed by the size of the verdict, and we conclude, after reviewing the record, that it was within reasonable limits. We also conclude that it is unlikely that the jury inflated its verdict because of a mistaken assumption that the award would be subject to income taxation.

We do not believe that the interests of justice require a new trial, total or partial. The judgment is affirmed.

WELLIVER, HIGGINS and BILLINGS, JJ., and MORGAN, Senior Judge, concur.

RENDLEN, C.J., and DONNELLY, J., not participating.

GUNN, J., not sitting.

ON MOTION FOR REHEARING

PER CURIAM.

The appellant's motion for rehearing for the most part raises points which were presented in its briefs, but the motion does claim that the opinion is inconsistent with one point discussed in *Dunn,* which, according to the motion, held that defendants were precluded from arguing that an award for loss of future earnings should be reduced to present value. *See* 621 S.W.2d 245, 254 (Mo. banc 1981).

The holding in *Dunn* related to a combined argument about present value and income tax, under the assumption that *Norfolk and Western Railway Company v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), was not to be applied retroactively. We have now held to the contrary but felt that reversal is not required in this case.

■ *Dunn* should not be read as holding that argument on present value of a future loss is not proper. Recent cases recognize the admissibility of economic evidence in evaluating damages. *Sampson v. Missouri Pacific Railway Co.,* 560 S.W.2d 573, 587 (Mo. banc 1978); *Raney v. Honeywell, Inc.,* 540 F.2d 932, 936 (8th Cir.1976). The issue of the present worth of a future loss could undoubtedly be presented on cross-examination of a claimant's expert witness, or through an expert called by the defense. The fact that a dollar today is not the same thing as a dollar payable some years from now, furthermore, is the matter of plainest fact which could be appropriately argued without the need for expert testimony.

The motion for rehearing is denied.

RENDLEN, C.J., and GUNN and DONNELLY, JJ., not participating.