**Phillip ROBERTSON,
Plaintiff–Respondent,**

v.

**BURLINGTON NORTHERN
RAILROAD COMPANY,
Defendant–Appellant.**

**No. 55601.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 23, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 28, 1990.

Application to Transfer Denied
April 17, 1990.

Thomas J. Prebil, William Allen Brasher, St. Louis, for defendant-appellant.

John D. Schneider, John A. Walsh, Jr., St. Louis, John T. Peak, Gene C. Napier, Kansas City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from a judgment of $1,000,000 against it in an action arising under the Federal Employers' Liability Act. We affirm.

Plaintiff, a resident of Oklahoma, sustained a ruptured disc when he jumped off a boxcar on which he was riding when the car derailed. The accident occurred at a road crossing in Fort Smith, Arkansas. Plaintiff was a member of a switching crew working with a diesel engine which was pushing a single boxcar across the road crossing. Because of cold weather the ballast materials around the rails had frozen hard. In addition the ballast materials had built up around the rails so that there were no flangeway spaces. As a result the flanges on the train wheels rode up on the compacted and frozen ballast materials causing the derailment.

Immediately prior to the accident plaintiff had been standing in the crossing guarding it from vehicular traffic. This was in accord with the railroad's operating rule 103 which provides:

"Movements over public crossings or authorized foot crossings not protected by a watchman or by gates, must be protected by a member of the crew under the following conditions:

When pushing cars over such crossings, except when the leading car is equipped with a back-up air brake hose or pipe and whistle in charge of a member of the crew ...

"The employee protecting the crossing under these conditions must be on the ground at the crossing until the front of movement has passed over the crossing."

Plaintiff mounted the car before the "front of movement" had passed over the crossing. There was evidence that at this crossing it was safer to board the train at the crossing because the right of way adjoining the crossing was uneven making it dangerous to board there. There was evidence that the absence of flangeway space

was a longstanding condition of this crossing known to the railroad and that the condition had not been corrected by the railroad. The defendant makes no challenge to the sufficiency of the evidence to establish its negligence.

■ We deal first with defendant's contention that it is entitled to a new trial because of concealment by a venireman during voir dire. We have recently addressed the standards applied in this state involving concealment on voir dire in *Mook v. Burlington Northern Railroad Company,* slip op. No. 55250, 1990 WL 2356 (Mo. App.E.D. Jan. 16, 1990). We need not restate those standards here because we find no concealment, intentional or unintentional. The venire panel was asked by plaintiff's attorney "I'm wondering if any member of the panel or any member of your immediate family has ever sustained a ruptured intervertebral disc." Venireman Walters stated in response: "Yes. I have a—it's called a deteriorating disc." This was further explained by Walters as deteriorating fiber surrounding the disc. Walters was then asked "... is your back condition a result of an injury?" His response was "Not to my knowledge. I just went to the doctor for pain, lower part of my back, and they told me this ... He say it could be age, an injury I had prior to that."

Following trial defendant filed its motion for new trial alleging that Walters had concealed a prior lawsuit involving injury to his back. No inquiry had been about prior lawsuits during voir dire. At the hearing on the motion for new trial defendant asserted instead that Walters had concealed the fact that his back condition resulted from a prior injury. In 1979 Walters had been involved in an automobile accident. He filed suit against his insurance carrier under his uninsured motorist coverage. He had sustained injury to his shoulder, neck and back in that accident. His petition made no allegation that a disc injury had occurred and in his deposition he made no claim of a disc injury. He settled the suit for, as he remembered, a thousand dollars.

At the new trial hearing Walters testified his back problem from the 1979 accident "was some pulled muscles or something." Several years after 1979 he began experiencing pain in his lower back at which time he was advised of the deteriorating disc.

We are unable to find any concealment here. Walters was asked if he had a ruptured disc. He replied he had a deteriorating disc. He stated he did not know the cause of that disc problem; he had been told it was either age or a prior injury. His prior injury was diagnosed as pulled muscles not a disc involvement. The amount of his settlement bespeaks something considerably less than a disc injury. Walters is not a doctor and it is the height of speculation to assume that he knew that the 1979 pulled muscles were the cause of his deteriorating disc several years later. In fact the record does not establish that the 1979 accident was contributory in any way to his subsequent back problems and only through speculation can such causation be inferred. His answers were full and accurate. Walters' reference to prior injury virtually cried out for additional questions of whether he had ever had a prior injury to his back and if so what that injury was. Those questions were never asked by either side. We find no error in the trial court's denial of a new trial on the basis of Walters' answers on voir dire.

Defendant next alleges error in the trial court's refusal to give a series of instructions tendered by defendant dealing with plaintiff's alleged contributory negligence. The trial court did give one instruction in that area hypothesizing plaintiff's failure to inspect the track prior to the train entering the crossing. There was evidence that such inspection was a part of plaintiff's duties. The jury assessed one hundred per cent of the fault against the railroad and zero per cent to plaintiff.

■ First, defendant contends that it was entitled to an instruction hypothesizing as negligence plaintiff's violation of rule 103. We believe that the tests applied to statutes and ordinances are the correct tests to apply to a rule of the railroad. To

constitute actionable negligence it must appear that: (1) there was in fact a violation of the rule; (2) the injured party was within the class of persons intended to be protected by the rule; (3) the injury complained of was of such character as the rule was designed to prevent; and (4) the violation was the proximate cause of the injury. *Purdy v. Foreman,* 547 S.W.2d 889 (Mo.App.1977) [3–5]. Neither (2), (3) nor (4) have been met here. It is clear from the wording of the rule itself that its purpose is to protect the public and the railroad from collisions occurring at a crossing. This is apparent because it applies only to unprotected crossings and only where the train itself does not have protective equipment. The rule is not designed to protect employees from the danger of derailment except in the limited circumstances where a derailment is caused by a collision between the train and a vehicle. That situation is obviously not present here. It does not suffice to say as defendant does, that "but for" plaintiff's violation of the rule he would not have been on the train to be injured when it derailed. The derailment and plaintiff's injury were in no way caused by plaintiff's violation of the rule. There was no basis for giving the tendered instruction and no error in refusing it.

Next defendant contends it was entitled to an instruction hypothesizing as negligence his boarding the train before the front of the movement passed over the crossing or his failure to properly inspect the tracks. The first hypothesis has been dealt with previously. The second hypothesis was submitted to the jury in a separate instruction.

■ Defendant also contends the court erred in failing to give an instruction premising contributory negligence on plaintiff's failure to use ordinary care for his own safety at the crossing. This was the rankest of roving commissions and it was not error to refuse it. *Wissman v. Wissman,* 575 S.W.2d 239 (Mo.App.1978) [7].

■ Finally, defendant contends the trial court erred in failing to give two instructions which hypothesized plaintiff's contributory negligence for riding on the car in an unsafe area and riding the car in an area that had no flangeway space. Both instructions are assumption of the risk instructions. *Mumma v. Reading Co.,* 247 F.Supp. 252 (D.C.Pa.1965) [5–11]. As stated in that case: "We think that plaintiff's conduct here, which consisted only of doing his normal work despite a potentially dangerous situation arising from defendant's negligence, was nothing more than a classic assumption of risk, that is mere ' * * * voluntary exposure to an obvious or known danger which negates liability.'" Assumption of the risk as a defense has been barred in FELA cases since 1939. 45 U.S. C.A. § 54 (1986). The instructions were properly refused.

■ Defendant next raises a contention that the court erroneously utilized MAI 24.01 as plaintiff's verdict director. That instruction has been approved in FELA cases on at least two occasions by our Supreme Court. *Dunn v. St. Louis–San Francisco Railway Co.,* 621 S.W.2d 245 (Mo. banc 1981) [22]; *Bair v. St. Louis–San Francisco Railway Co.,* 647 S.W.2d 507 (Mo. banc 1983) [5]. There was no error in utilizing it.

■ Defendant also contends the trial court erred in failing to dismiss the case on *forum non conveniens* grounds. The record does not establish any particular inconvenience in the forum of St. Louis. Only two employees witnessed the accident. Plaintiff's medical treatment and surgery occurred in St. Louis County and his doctors were located in the St. Louis area. We find no error.

Judgment affirmed.

SATZ, P.J., and GRIMM, J., concur.