Lawrence J. ANGLIM, Respondent,

v.

**MISSOURI PACIFIC RAILROAD
CO., Appellant.**

No. 74124.

Supreme Court of Missouri,
En Banc.

June 30, 1992.

As Modified on Denial of Rehearing
July 21, 1992.

William Guerri, Dan H. Ball, James W. Erwin, Deanne M. Macer, St. Louis, for appellant.

Robert F. Ritter, Joseph L. Walsh, III, Gray & Ritter, Paul C. Hetterman, St. Louis, for respondent.

HOLSTEIN, Judge.

Following jury trial, a judgment was entered in favor of plaintiff Lawrence J. Anglim and against Missouri Pacific Railroad for injuries sustained in a slip and fall. The claim was brought under the Federal Employers Liability Act, 45 U.S.C. §§ 51–60 (1988) (FELA), and the Boiler Inspection Act, 45 U.S.C. §§ 22–34 (1988). Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer.

I.

The first issue, and the issue moving this Court to grant transfer, is whether the trial court abused its discretion in failing to sustain defendant's motion to dismiss plaintiff's claim under the doctrine of *forum non conveniens*. The record before the trial court when the motion was ruled upon is extremely sparse, being limited to pleadings, the motion, suggestions in support of the motion, and three affidavits. Also before the trial court were plaintiff's suggestions in opposition to the motion to dismiss.

The petition alleges that on April 6, 1984, while plaintiff was employed as a yardmaster at defendant's Omaha, Nebraska, yard, he was injured when he slipped and fell on grease, oil, and water that had accumulated on the steps and walking surfaces of a locomotive. The petition also alleges that defendant's "principal place of business" is in St. Louis, Missouri. Defendant's answer denies any liability and also denies that its principal place of business is in St. Louis. However, it admits being a "common carrier by railroad in interstate commerce in the states of Missouri, Nebraska, and other states in the United States."

One of the affidavits attached to the motion to dismiss for *forum non conveniens* was that of defendant's attorney, William Hamblin. He asserted that "[a]ll of the anticipated witnesses to be called by the parties in this matter, with the exception of Dr. Shoedinger in St. Louis, either work or reside in the Omaha, Nebraska area." The second affidavit was that of Robert G. Galley, manager of the Casualty Management Office for Missouri Pacific. He stated that the defendant railroad is registered to do business and "maintains track, offices and repair facilities" in both Missouri and Nebraska. He stated that defendant is a Delaware corporation and since December 31, 1984, has had its "headquarters" in Omaha, Nebraska. The affidavit also stated that plaintiff and all witnesses except Dr. Shoedinger reside in or around Omaha, Nebraska. Neither of the affidavits indicate precisely where the Missouri offices or facilities are located or exactly what business was done at any of those offices. More particularly, neither affidavit establishes the issue raised in the pleadings, *i.e.*, where defendant's "principal place of business" is located.

Plaintiff's counsel also filed an affidavit alleging that plaintiff was evaluated by numerous physicians and health care providers in St. Louis, including Dr. Shoedinger who examined plaintiff less than a month after the accident and performed surgery at a St. Louis area hospital. The affidavit further asserted "upon information and belief" that Missouri Pacific does business throughout Missouri, maintaining "offices and agents for the transaction of its usual and customary business in the city of St. Louis." On this record the trial court overruled the motion to dismiss.

The doctrine of *forum non conveniens* provides that notwithstanding proper jurisdiction and venue by the letter of the statute, a trial judge has discretion to not exercise jurisdiction if the forum is seriously inconvenient for the trial of the action involved and if a more appropriate forum is available to the plaintiff. *Restatement (Second) of Conflict of Laws* § 84 (1971). The doctrine is designed to prevent a plaintiff from using a liberal venue statute to vex, oppress or harass a defendant by bringing a suit in a forum unrelated to the parties or cause of action. But a plaintiff's choice of forum is not to be disturbed except for "weighty reasons" and the case should be dismissed only if the "balance is strongly in favor" of the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Silversmith v. Kenosha Auto Transport*, 301 N.W.2d 725, 728 (Ia.1981).

The first Missouri case to refer to the doctrine of *forum non conveniens* by name was *State ex rel. Southern Ry. Co. v. Mayfield*, 359 Mo. 827, 224 S.W.2d 105 (1949), *cert. granted*, 339 U.S. 918, 70 S.Ct. 623, 94 L.Ed. 1342 *vacated*, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950), although the doctrine was not applied there. This Court both acknowledged and applied the doctrine in *Elliott v. Johnston*, 365 Mo. 881, 292 S.W.2d 589 (1956). There the plaintiff's lawyer and a cooperative, if not collusive, defendant arranged for suit to be filed and service of process to be had in Vernon County, Missouri. The claim arose out of an automobile accident that had occurred in an adjoining Kansas county. The parties and all witnesses resided in Kansas. Obviously, the substantive law of Kansas was applicable to the case. The trial court found, *inter alia*, that the trial could take at least twelve days, would be burdensome on taxpayers, and that "the Missouri dockets and that of Vernon County are already overloaded." The trial court's decision to dismiss on the basis of the *forum non conveniens* doctrine was affirmed. 292 S.W.2d at 594–95.

The doctrine was again acknowledged in *Loftus v. Lee*, 308 S.W.2d 654 (Mo.1958). But there this Court held that an action filed in Jackson County, Missouri, involving an auto accident that occurred in a Kansas suburb of Kansas City, Missouri, between two Kansas residents was not so unjust and oppressive as to justify application of the doctrine of *forum non conveniens*. The trial court's dismissal on that basis was reversed. 308 S.W.2d at 661.

The applicability of the doctrine to FELA cases was in doubt for a time due to constitutional concerns about denying nonresidents access to Missouri courts. *See State ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950); *State ex rel. Southern Ry. Co. v. Mayfield*, 362 Mo. 101, 240 S.W.2d 106 (Mo. banc 1951); *see also Loftus v. Lee*, 308 S.W.2d at 657. However, this Court subsequently held the doctrine of *forum non conveniens* applicable to a FELA action notwithstanding prior decisions to the contrary. *State ex rel. Chicago, Rock Island & Pacific R.R. Co. v. Riederer*, 454 S.W.2d 36, 38–39 (Mo. banc 1970). This Court's most recent statement of the doctrine in a FELA case is found in *Besse v. Missouri Pacific R.R. Co.*, 721 S.W.2d 740 (Mo. banc 1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). Finally, this Court held that the doctrine has no intrastate application. *Willman v. McMillen*, 779 S.W.2d 583, 586 (Mo. banc 1989).

In *Riederer*, at least six factors were identified that trial courts were to use as a guide in exercising their discretion to apply the doctrine of *forum non conveniens:*

(1) place of accrual of the cause of action,

(2) location of witnesses,

(3) the residence of the parties,

(4) any nexus with the place of suit,

(5) the public factor of the convenience to and burden upon the court, and

(6) the availability to plaintiff of another court with jurisdiction of the cause of action affording a forum for plaintiff's remedy.

454 S.W.2d at 39. However, neither *Riederer* nor its progeny purport to give an exclusive listing of facts to be considered in

deciding whether to apply the doctrine of *forum non conveniens* or the respective weight accorded to any particular factor. Precise rules dictating when the doctrine is applicable might seem attractive. However, evidentiary permutations justifying application of the doctrine are unpredictable. The more prudent course is not "to catalogue the circumstances which will justify or require either grant or denial of remedy." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. In deciding whether to dismiss, a trial court necessarily must determine facts and, in doing so, weighs evidence and assesses the credibility of witnesses as to the reasons given for selecting or opposing a particular forum. Witness intangibles and knowledge common in the community where the case is tried impact on the weight and credibility of evidence.[1] Because the application of the doctrine of *forum non conveniens* is fact intensive and the weight to be accorded any factor is dependent on the circumstances, trial court discretion is essential. Nevertheless, discretion is not the equivalent of whim; discretion must be applied with control. *Besse,* 721 S.W.2d at 742.

■ On appeal, in determining whether the trial court's ruling amounted to an abuse of discretion, only those facts will be considered that were before the trial court when it ruled on the motion to dismiss,[2] and the evidence will be viewed in a light favorable to the result of the trial court. Also on appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion. *State ex rel. Webster v. Lehndorff Geneva,* 744 S.W.2d 801, 804 (Mo. banc 1988). Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety

of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Id.* In the context of an appeal from an order overruling a motion to dismiss based on a claim of inconvenient forum, the decision of the trial court is not to be disturbed unless the appellate court is firmly convinced of two propositions. First, the appellate court must be convinced that the relevant factors weigh heavily in favor of applying the doctrine of *forum non conveniens.* Second, the court must be convinced that permitting the case to be tried in Missouri would lead to an injustice because such trial would be oppressive to the defendant or impose an undue burden on Missouri courts.

■ The factors identified first in *Riederer,* and later in *Besse,* favorable to dismissal of this case include the residence of plaintiff in Nebraska, that the action accrued in Nebraska, and that most witnesses reside in Nebraska. In addition, defendant agreed to waive the statute of limitations for the period after the suit was filed in the City of St. Louis, thus giving plaintiff a forum in which to pursue his remedy.

■ In assessing the "location of witnesses" factor, defendant notes that seven identified witnesses were from Nebraska, while only Dr. Shoedinger was in Missouri. In *Besse,* eyewitnesses and treating physicians seem to have been placed on an equal footing in making the *forum non conveniens* analysis. 721 S.W.2d at 742. However, it is not unusual for the most critical fact issue in a personal injury suit to be the nature and extent of the plaintiff's injury, while the facts surrounding the accident that resulted in the injury may be virtually uncontested. In such cases, the need to have ready access to the treating physicians and medical records is as critical to the preparation and trial of the case as is accessibility to eye-

---

1. The court of appeals opinion takes note of a "multistoried Missouri Pacific Railroad Building with offices for ᴴundreds of defendant's employees within sight of the Circuit Court of the City of St. Louis."

2. Certain language in *Besse* suggests that evidence offered during trial should be considered on appeal in determining if the trial court abused discretion in overruling a pre-trial motion based on *forum non conveniens. See Besse,* 721 S.W.2d at 743. That dicta is not supported by reason or case law and is not to be followed.

witnesses to the accident. In addition, the cost of presenting an expert treating physician at some location distant from his or her practice may exceed the cost of transporting several eyewitnesses to Missouri. On this, as on other factual matters, the moving party has the initial burden of establishing the relative inconvenience caused by the witnesses' location and, on appeal, the aggrieved party must also show that discretion was abused. The mere fact that more witnesses are located in another state than are located in Missouri does not conclusively establish the question of witness location favorably to the defendant.

On the issues of defendant's residence and nexus to Missouri, the evidence is ambiguous, if not favorable, to plaintiff. Missouri Pacific suggests that it is not a "resident" of Missouri because its corporate headquarters is in Omaha, Nebraska. The argument is founded on a statement in *Besse* that the location of defendant's headquarters in Missouri was a "controlling circumstance" in refusing to dismiss plaintiff's case. 721 S.W.2d at 743. The argument assumes that a corporate headquarters is necessarily the "principal place of business" of a corporation. The assumption is flawed. A corporation may be created under the laws of one state, have its headquarters in another state, and do its primary business in yet one or more other states. Nothing in the affidavits establishes the principal location of defendant's business or the primary location of defendant's Missouri operations. The record establishes that defendant has offices, employees, a registered agent, tracks, and maintenance facilities in the City of St. Louis and that it engages in all aspects of the business of a common carrier railroad in Missouri. Defendant's brief candidly admits it is a resident of St. Louis under Missouri's corporate venue statute. § *508.040*, RSMo 1986. Implicitly defendant solicits business and undertakes transportation of goods to and from Missouri shippers. Implicit also is that defendant's business is conducted by or through its facilities in the City of St. Louis, Missouri.

Other than the designation of Omaha as its headquarters, defendant has failed to show that it has so significantly limited its Missouri operations that it may not be considered as a Missouri "resident" in the context of the *Riederer* factors.[3] As stated in *Besse*, it is seldom considered inconvenient to be sued in a defendant's place of residence. 721 S.W.2d at 743. To prevail on a claim that the trial court abused discretion finding the defendant has a Missouri residence or nexus, the defendant must produce substantial evidence clearly demonstrating that the corporate business activities in Missouri are limited or that those activities have no significant relationship to the jurisdiction in which the case is filed.

The other factor to be considered is the convenience to and burden on the court. Statistical data may be submitted to support a claim that the caseload of the trial court is so overwhelming that the case cannot be expeditiously litigated in the jurisdiction where the case is filed. Such matters as taxpayer cost, jury time, the necessity to interpret and apply the law of a foreign jurisdiction, and similar facts may be offered and weighed by the trial court. In addition, the trial court may take notice of the congestion of its own docket. In this case, the trial judge is experienced and has served as the presiding judge of his circuit. He was undoubtedly aware of the state of the docket in St. Louis when the motion was heard. The substantive law in question is federal law. The courts of this state are familiar with both the interpretation and application of the Federal Employers Liability Act. No specific

**3.** While not precisely on point, various cases construing Missouri's venue statutes have found a corporation to be a resident of the county in which a *registered agent is* located or where the corporation maintained an office or agent for the transaction of its business. *State ex rel.* *Rothermich v. Gallagher*, 816 S.W.2d 194, 198–200 (Mo. banc 1991); *State ex rel. Dick Procter Imports, Inc., v. Gaertner*, 671 S.W.2d 273, 274–75 (Mo. banc 1984) (construing § 508.010, *et seq.*, RSMo 1986).

evidence of any undue burden on the court was offered at the motion hearing.[4]

Under the facts of this case, the trial court may well have sustained the motion to dismiss without abusing its discretion. But to reverse the trial court's ruling on appeal requires more than a showing that the motion could have been sustained. Defendant has failed to convince this Court that the factors strongly favor dismissal and that this case imposes an oppressive inconvenience on the defendant or undue burden on the circuit court of the City of St. Louis. In sum, after reviewing the record and considering all relevant factors, it cannot be said that the trial court's ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Thus, no abuse of discretion has occurred. The first point is denied.

 In reaching this conclusion, this Court reiterates that the doctrine of *forum non conveniens* is available in appropriate cases and is neither abandoned nor modified. We reject the suggestion that the rule be modified so that whenever litigation is between out-of-state residents over causes of actions that arose out of state, a plaintiff must bear the burden of justifying the choice of forum. The federal statute authorizes venue in any jurisdiction "in which the defendant shall be doing business." 45 U.S.C. § 56 (1988). Because of the policy declared by that statute, the United States Supreme Court has said, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. The Supremacy Clause of article VI of the United States Constitution constrains us to apply the policy expressed by the federal venue law with no less enthusiasm than if it were our own. *Bunge Corp.*

*v. Perryville Feed & Produce,* 685 S.W.2d 837, 839 (Mo. banc 1985). Also, our state's General Assembly has adopted an extremely liberal venue policy in regard to railroad corporations. A railroad controlling, owning, or operating facilities in two or more counties may be sued in any such county or in any county where it keeps an office or agent for the transaction of its business. § *508.040,* RSMo 1986. For these reasons, the defendant has the burden of establishing all factors supporting a claim that a Missouri court is an inconvenient forum.

### II.[5]

 Defendant's next point on appeal alleges trial court error in overruling its motion for a new trial based upon the failure of one juror to disclose her involvement in a lawsuit upon voir dire examination.

The following question was addressed to the entire venire by plaintiff's attorney:

> We talked earlier about Workmens [sic] Compensation claims. And what I'd like to do now is broaden that question a little bit. Is there anybody who's ever filed any sort of claim for personal injury other than Workmens [sic] Compensation? So if you've been in automobile accident and you were injured and you filed a claim, even if you didn't file a lawsuit, but you made the claim or you maybe slipped and fell somewhere and you filed a claim against somebody asking for compensation.
>
> . . . .
>
> ... Any type of claim. And to simplify matters and save some time, not only the members on the panel, but also members of their family, so either you, your husband, wives, children, nephews, cousins, the whole shebang.

Juror # 1, Mrs. Margaret Unger, had previously answered more specific questions concerning back injuries and workers' compensation claims by members of her family.

---

4. The briefs of defendant and an *amicus* brief filed in this Court by other railroads contain alleged statistics and data regarding FELA claims in the City of St. Louis. The data were not before the trial court when it ruled on the motion to dismiss and will not be considered at this late date.

5. The remainder of this opinion, with some minor changes, is that of the Missouri Court of Appeals, Eastern District, authored by the Honorable Carl R. Gaertner, Chief Judge.

She disclosed the fact that her husband had sustained a "slipped disk" in his back twenty years ago, and that he had also made a workers' compensation claim for a knee injury. In response to the question set forth above, she informed counsel that her son had a pending claim arising out of an automobile accident. She did not mention the fact that there was then pending in United States District Court for the Eastern District of Missouri a lawsuit in which she was named as a plaintiff. She was chosen to serve on the jury and signed the verdict.

A hearing was held pertaining to this allegation in defendant's motion for new trial. It was there developed that Mrs. Unger's husband was an asbestos worker. In 1986, a lawsuit was filed against a number of asbestos manufacturers alleging Mr. Unger had contracted asbestosis. Mrs. Unger was named as a plaintiff in a consortium count. At the hearing she testified that although she had accompanied her husband when his deposition was taken and had at that time been questioned briefly about his health, she had not been aware of the fact she was named as a plaintiff in the lawsuit. It was her understanding that the lawsuit had been filed on behalf of her husband, who had never received any medical treatment or missed any time from work because of asbestosis, in order to protect his rights if, in the future, he began to suffer from years of exposure to asbestos. In fact, after the verdict in this case but before the hearing on the motion, the federal case was dismissed upon the agreement of the defendants therein to waive any statute of limitations defense. Mrs. Unger testified that at the time she was questioned about family claims and injuries the Federal Court lawsuit never entered her mind; she "never thought of it" until defendant's attorney called her.

In its order overruling defendant's motion for new trial, the court made the following finding:

> The Court held a hearing on Defendant's portion of its motion dealing with the issue of non-disclosure by a juror. The Court heard the juror's testimony and is convinced that she is a very truthful witness. During voir dire she disclosed three events involving personal injury claims in her family. The non-disclosure complained of here involves an asbestos class action suit wherein her husband was a named Plaintiff as well as herself. She did not know she had been named as a Plaintiff. Her husband was named as a Plaintiff because he was an asbestos worker. He did not have asbestosis and was not being treated for it. The action was filed to toll the statute of limitations. The case was then dismissed with the provision that if any of those named Plaintiffs contracted asbestosis then the statute of limitations would not be raised as a defense in a subsequent filing. The Court is of the opinion that this was an innocent non-disclosure and there was no prejudice to the Defendant.

■ The trial court's conclusion that this was an "innocent non-disclosure" indicates that the trial judge believed the juror's conduct was unintentional. In addition, because Mrs. Unger had at present sustained no injury for which she anticipated recovery, her failure to respond to a question regarding any "claim" was reasonable. Where a nondisclosure is both unintentional and reasonable, the relevant inquiry is whether the juror's presence did or may have influenced the verdict so as to prejudice the party seeking a new trial. *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 37 (Mo. banc 1987).

■ A trial court's acceptance or rejection of the juror's explanation is not lightly overturned on appeal. The trial court's finding of a lack of prejudice is a fact finding and, as such, will be disturbed on appeal only for abuse of discretion. 736 S.W.2d at 37. Only when an appellate court is convinced from a totality of the circumstances that the right to fair trial and the integrity of the jury process has been impaired should the trial court be found to have abused discretion. *Alexander v. F.W. Woolworth Co.*, 788 S.W.2d 763, 768 (Mo.App.1990).

We have no such conviction here. The trial court specifically found Mrs. Unger to

be a truthful witness. Because of the greater ability of the trial judge to observe the juror's demeanor both during voir dire and during a post-trial explanation of her nondisclosure, we afford his determination of credibility great deference. The record lends support to the trial court's finding as Mrs. Unger's openness and candor is demonstrated by the fact that she responded to questions propounded to the entire venire more than any other prospective juror. We can perceive no reason, nor does defendant suggest any reasons, to explain why she should unhesitatingly disclose the prior claims of her husband and son and conceal the asbestosis lawsuit other than what she said: "I never thought about it." The unusual nature of the Federal Court action, filed to protect against future developments before any medical treatment or loss of work had taken place, renders this forgetfulness understandable. Mrs. Unger was a former employee of a railroad as had been her father-in-law, facts disclosed on voir dire, and bore no animosity toward this defendant or any railroad. The record amply supports the trial court's finding of an innocent non-disclosure causing no prejudice to defendant.

### III.

 Over plaintiff's objection defendant presented the testimony of Professor Gary Herrin, an expert in ergonomics, the study of work. The gist of Professor Herrin's testimony is stated in defendant's brief as follows:

> The import of his testimony was that the locomotive's steps would not have been significantly more slippery with oil on them than if they were dry and [plaintiff] should not have slipped on the steps even if they were oily ... [and] if [plaintiff] had slipped on the steps in the manner he described he would have fallen *towards* the locomotive instead of *away* from it.

In advance of the testimony, plaintiff's counsel objected that the proposed evidence was not a proper subject of expert testimony because it concerned a matter of common knowledge and because of the lack of foundation in that the tests the professor conducted did not reproduce similar circumstances to those existing at the time of plaintiff's fall. Although expressing some reservation, the trial court overruled the objection and permitted the testimony.

The witness testified concerning tests he made to determine the coefficient of friction between an oily locomotive step and work shoes. He did not know the type work shoes worn by plaintiff, but used what he was told by a shoe repair man were common types of soles on work boots, the only two types the repair man had in stock. He did not know the exact nature of the substance on the steps when plaintiff fell but used medium weight shop lubricating oil in his test. However, based upon assumptions drawn from plaintiff's deposition, he developed a computerized simulation of a three-dimensional bio-mechanical model and simulated twenty-four different postures, that is, varying angles of a foot upon the steps and positions of hands upon the railings, and concluded that:

> So there's force that's acting on foot and force that's acting on each of the hands. And so in no case did we observe hand forces that exceeded peoples grip. Doesn't have the capability based on population studies. And with one exception—two exceptions maybe we could, wouldn't simulate a slipping type of conditions with the stair and the foot.

Based upon the same assumptions and tests, the witness also concluded that plaintiff would have fallen forward rather than backward as he claimed. At the conclusion of all the evidence plaintiff offered the following withdrawal instruction:

> The evidence of Professor Gary Herrin is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

Because the expert testimony was based upon the assumption of facts not in evidence and upon tests that did not duplicate the conditions existing at the time, particularly the nature and extent of the oil and grease and the type and condition of the soles of plaintiff's boots, the trial court gave the withdrawal instruction. We find no error.

Exclusion of testimony and giving withdrawal instructions are both matters within the discretion of the trial court. *Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. banc 1990); *Dunn v. St. Louis–San Francisco Ry. Co.,* 621 S.W.2d 245, 252 (Mo. banc 1981). Experimental evidence is admissible only if the experiment is made under substantially similar conditions to those at the time of the accident, although the conditions need not be identical. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 610 (Mo. banc 1977). That no such substantial similarity was shown between the material facts pertaining to plaintiff's slip and fall and the computer test on which Professor Herrin based his opinion is obvious. The trial court did not err in giving the withdrawal instruction.

### IV.

Plaintiff introduced evidence concerning the loss of future wages as a result of his injury. No evidence was introduced regarding the present value of the total of wages to be earned in the future. At defendant's request the court gave the following instruction:

> If you find in favor of plaintiff and decide to make an award for any loss of earnings in the future, you must take into account the fact that the money awarded by you is being received all at one time instead of over a period of time extending into the future and that plaintiff will have the use of this money in a lump-sum. You must, therefore, determine the present value or present worth of the money which you award for such future loss.

Such an instruction is mandatory in a FELA case if requested by any party. *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 411–12, 105 S.Ct. 1347, 1349, 84 L.Ed.2d 303 (1985). Defendant now argues the court erred in permitting plaintiff to recover as a part of his damages any amount for the loss of future wages because the jury was not given any advice regarding the manner of computing the present value of future losses. First of all, defendant implies it was error to give the present value instruction because it had no

evidentiary support. However, the instruction was given by the court at the request of the defendant. A party may not be heard to complain on appeal about an instruction offered by the complaining party. *Bonnot v. City of Jefferson City,* 791 S.W.2d 766, 771 (Mo.App.1990).

Of more substance is defendant's argument that, since a present value instruction is required in FELA cases, evidence of the manner of computing present value is an essential element of an FELA plaintiff's burden of proof. Defendant relies upon two decisions of the United States Court of Appeals, 3rd Circuit, which so hold. *DiSabatino v. National Railroad Passenger Corp.,* 724 F.2d 394, 396 (3rd Cir.1984); *Ballantine v. Central Railroad of New Jersey,* 460 F.2d 540, 544 (3rd Cir.), *cert. denied,* 409 U.S. 879, 93 S.Ct. 133, 34 L.Ed.2d 133 (1972). Defendant acknowledges the 8th Circuit has reached a contrary conclusion. *Duncan v. St. Louis–San Francisco R.R. Co.,* 480 F.2d 79, 87 (8th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1972).

While no Missouri case has specifically addressed the point, Missouri appears to follow the rule laid down by the 8th Circuit. In *Bair v. St. Louis–San Francisco Ry. Co.,* 647 S.W.2d 507 (Mo. banc), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 109 (1983), this Court stated, "The fact that a dollar today is not the same thing as a dollar payable some years from now, furthermore, is the matter of plainest fact which could be appropriately argued without the need for expert testimony." 647 S.W.2d at 513. *See also Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 387 (Mo. banc 1986).

Defendant discounts the authoritative nature of *Bair,* arguing that it has been rendered obsolete by reason of the *Dickerson* mandate to instruct on present value. While *Dickerson* required the instruction noted above, it also stated, "[N]o single method for determining present value is mandated by federal law." 470 U.S. at 412, 105 S.Ct. at 1349. Therefore, we do not run afoul of the federal law by follow-

ing *Bair* and holding that either plaintiff or defendant may offer present value evidence, but whether or not such evidence is offered, the subject is open to jury instruction if requested and to jury argument. We reject defendant's argument that the verdict of the jury reflects a "total failure to reduce the future damages to future value." The jury returned a general verdict, as is required under Missouri procedure. *Rule 71.02.* The sum included within the general verdict as compensation for future loss of wages is a matter forever relegated to the bosom of the jury. In the absence of any contrary indication, we can assume each juror in his or her respective fashion complied with the instruction and determined the present value of future wage loss.

## V.

Plaintiff's cross-appeal challenges the trial court's order amending the judgment by granting defendant a set-off in the sum of $8,134.61 in recognition of money paid by Union Pacific Railroad (UPR) for medical treatment and $81,625.57 representing payments made to plaintiff by Union Pacific Corporation (UPC) pursuant to a salary continuation and long-term disability plan. The court further ordered that defendant be given credit for any disability payments made between the time of judgment and the date the judgment is satisfied.

Plaintiff argues that defendant Missouri Pacific Railroad (MPR) is not entitled to a set-off under the provisions of 45 U.S.C. § 55 (1988) because it did not make the payments, because the payments were not made in order to reduce its liability under the FELA, and because the plans pursuant to which the disability payments were made do not provide for recoupment of sums paid prior to judgment in the FELA action.

45 U.S.C. § 55 (1988) provides, in pertinent part, as follows:

[I]n any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

Plaintiff concedes that if the payments at issue were made by MPR the statute would apply and MPR would be entitled to the set-off. However, because the payments were made by UPR and UPC, plaintiff argues the statute has no application and the collateral source rule prohibits the giving of credit to the defendant for payments made by others.

At the heart of this dispute is the corporate structure in which the three corporations exist. As we understand the situation, UPC is a holding company which, through various wholly owned subsidiary corporations, is the ultimate owner of 100 percent of the stock of UPR and MPR. Although there has been considerable merging and consolidation of the operations of the various corporations, they have each maintained a distinct corporate status and identity. Plaintiff relies upon *Boswell v. May Centers, Inc.,* 669 S.W.2d 585 (Mo. App.1984), in which a subsidiary corporation sought immunity from its negligent infliction of injury upon an employee of its parent corporation under the exclusive remedy provisions of the workers' compensation law § 287.120.1, RSMo 1986. In denying the subsidiary corporation such immunity, the court stated:

It is totally incongruous and patently unjust to permit the parent to hide behind the shield of separate corporate identity when advantageous, but to disallow such separateness when it is not. Strangers may be permitted to show commonality of control and identity, but the corporation may not "pierce its own corporate veil"—a veil it has deliberately established.

*Boswell,* 669 S.W.2d at 586.

Although we find no fault in the principles enunciated there, *Boswell* is not dispositive of the issue here presented. In *Boswell,* the subsidiary corporation did not fit within the statutory definition of an

"employer", § 287.030.1(1), RSMo 1986, and therefore did not have standing to assert the exclusive remedy defense. That the payments in this case were made by related but nevertheless distinct corporations is not a crucial issue in determining the applicability of 45 U.S.C. § 55. In distinguishing between payments under the statute and collateral source payments, the federal courts have said "[t]he important consideration is the character of the benefits received, rather than whether the source is actually independent of the employer." *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 450 (8th Cir.1984). Thus, in *Folkestad v. Burlington Northern, Inc.*, 813 F.2d 1377 (9th Cir.1987), payments made through an insurance company under a plan financed by various railroads were held subject to the statutory setoffs. In both *Clark* and *Folkestad* particular note was paid to the fact that, although the plans provided for payment on account of both work related and non-work related injuries, the plans also provided for reduction of the employee's recovery under FELA to the extent of payments received. Permitting this setoff "was appropriate because of the intent of the Congress to permit the employer to avoid double liability." *Folkestad*, 813 F.2d at 1383. As noted in *Clark*, 726 F.2d at 451, "the employer's manifest intent to avoid double liability in offering disability plans must be respected if the collateral source rule is not to swallow up 45 U.S.C. § 55 at the ultimate expense of employees."

The plans under which the payments were made in this case provide they are made on behalf of "affiliate" companies, which include MPR. The plans also provide that payments made shall be reduced by any amounts payable by any workers' compensation, *employer's liability* or similar law. We think it obvious the purpose of the plans, covering employees of all the related railroads was to avoid double liability. This purpose, in accord with congressional intent, is the crucial issue. It is to the benefit of the injured employee that he receive payment for medical care and disability income without the inevitable delay attendant to the conclusion of litigation in which these medical expenses and lost wages are a part of his recovery. The railroad should not be punished nor should the employee receive a windfall for which he has contributed nothing, by allowing the employee a double recovery.

We also note that, although the payments under the plans were not made by checks drawn against any MPR account, the payroll of MPR and other subsidiary railroads are also paid by UPR. Charges against the various companies, including charges for the cost of the plans, is a matter of internal bookkeeping procedures within the overall corporate structure.

Accordingly, plaintiff's appeal is denied.

The judgment of the trial court in all respects is affirmed.

ROBERTSON, C.J., COVINGTON, BENTON and PRICE, JJ., and CROW and CONLEY, Special Judges, concur.

THOMAS, J., not participating.