**CITY OF SPRINGFIELD, Missouri, Respondent,**

**v.**

**THOMPSON SALES COMPANY, et al., Appellants.**

**No. SC 83912.**

Supreme Court of Missouri, En Banc.

April 9, 2002.

Jerome Wallach, Stanley J. Wallach, St. Louis, for Appellants.

---

Charles B. Cowherd, Springfield, JoAnn Tracy Sandifer, Husch & Eppenburger, Clayton, for Respondent.

LAURA DENVIR STITH, Judge.

The Thompsons appeal the judgment awarding them $2,543,000 for 5.5 acres of property they owned in downtown Springfield that was condemned for use as a city park by the City of Springfield. They allege that reversible error occurred when the City stated during *voir dire* that some of the jurors might believe that their taxes would go up as a result of the award to the Thompsons. They further allege that this error was compounded by the City's comments during *voir dire* that some people appeal the amount offered initially in condemnation because they are greedy and by the City's reference to the condemnation commissioners and to condemnation negotiations after the judge sustained the City's motion *in limine* to exclude such evidence. This Court agrees the City's comments resulted in prejudicial error, reverses the judgment and remands the case for a new trial.

## I. FACTS/BACKGROUND

Two different companies connected with the Thompson family (collectively referred to as the "Thompsons") owned the four parcels and improvements thereon involved in the condemnation proceedings (hereinafter referred to as "the Property"). The parcels together totaled approximately 5.5 acres and were treated as one property on which the Thompsons ran their family car dealership. The Thompson family has been in the car business since 1919. Since 1954 the business has been located in downtown Springfield. The condemnation action involved the total taking of the Property. Three condemnation commissioners assessed total damages for the taking in the amount of $3,046,000.

Both the City and the Thompsons filed exceptions and requested a jury trial.

Prior to trial, the City filed a motion *in limine* to exclude any mention of the commissioners' award or condemnation negotiations. The Thompsons consented to the exclusion of these items, and the court sustained the motion on those points. The parties disagree as to whether the judge also informed the parties that he would allow or consider allowing jurors to ask questions of witnesses after counsel had completed their questioning. In either event, when the issue was raised after *voir dire*, counsel for each party indicated reservations about the proposed procedure for jury questions. The following day, prior to trial, the Thompsons' counsel again objected to allowing juror questions.

The trial judge considered but rejected the objections raised. He then modified MAI 2.01 to tell the jurors that they would be permitted to ask questions of witnesses:

> You will be given the opportunity to ask written questions of any of the witnesses called to testify in this case. You are not encouraged to ask large numbers of questions because that is the primary responsibility of counsel.

The judge also modified MAI 2.01 to inform the jurors that the procedure for asking questions would be that each juror would be "requested to write a question or write something on a piece of paper after each witness," even if the juror had no questions, and then pass the paper to the bailiff. In this way, onlookers would not know which members of the jury had submitted which questions and who had just passed in papers without questions on them. The jury was told that the court and the attorneys would review the questions and that it was likely that only some of the proposed questions would actually be asked of the witnesses.

The outlined procedure was initially followed at trial, with all jurors writing something down on paper and passing it to the bailiff after each witness. As the trial progressed, those who had no questions quit writing anything down, and one of the jurors asked the majority of the remaining questions. The parties disagree as to how many questions the jurors asked. The City asserts that the jurors submitted 119 questions, of which 67 were asked, although the Thompsons suggest the number was higher. The number of questions submitted by jurors for each witness also varied; less than half a dozen questions were asked of some witnesses while, by one calculation, the jurors submitted more than two dozen questions to another witness. The judge and attorneys reviewed and limited or revised the questions actually posed to the witnesses, so that not all of the questions submitted were actually asked. But, as the trial progressed, both counsel were permitted to follow up with questions of his or her own, and some of this additional questioning was fairly extensive.

The Thompsons' evidence supported an award of between $3,630,000 and $5,500,000 for the property. The City's evidence supported an award of $2,400,000. The jury awarded $2,543,000 for the Property. The Thompsons appeal, alleging that the comments and questions of the City's counsel during *voir dire*, discussed in detail below, and the method used in jury questioning caused prejudicial error that resulted in the jury awarding almost exactly what the City requested. The Thompsons allege that these errors were so prejudicial as to require reversal and a new trial.

## II. VOIR DIRE COMMENTS

■ The Thompsons argue that, whether considered individually or cumu-latively, the City's improper appeals to the jurors' pocketbooks and its reference to the condemnation commissioners and to condemnation negotiations after the judge sustained the City's motion *in limine* to exclude such evidence were so prejudicial as to require grant of a new trial.

Although the trial court ruled *in limine* that no mention was to be made of the commissioners' award or negotiations to acquire the Property, counsel for the City nonetheless sought to explain to the jurors how the case came to be in court, stating:

If there's a property owner that's involved in this project that says I don't want to sell, and that property owner may say I don't want to sell because he's greedy, he wants to up the price because he knows they need to come through his property . . .

Shortly thereafter, the City's counsel said, "[b]efore condemnation proceeding can be filed, there has to be an attempt at negotiations to buy the property willingly. And if that fails, then the suit is filed, commissioners decide . . ." At this point, counsel for the Thompsons interrupted and objected that the trial court had sustained the City's own *in limine* motion that references to condemnation negotiations or the commissioners' award not be permitted and that the City's comments "went against" their own motion. Counsel requested a mistrial. The judge sustained the objection but denied the motion for mistrial.

Later during *voir dire*, counsel for the City said:

**Now there may be somebody on the panel that feels like well, look, if I award Thompsons this money, my taxes might go up as a—**

(emphasis added). Counsel for the Thompsons immediately objected and asked for a mistrial. After a lengthy con-

ference outside of the hearing of the jury, the judge sustained the objection in open court and directed counsel for the City to proceed with another line of questioning. He took the motion for mistrial under advisement. The next day, counsel for the Thompsons again asked the judge to grant the motion for mistrial, but the judge again took the motion under advisement. The judge eventually overruled the motion for mistrial at the close of the evidence.

The Thompsons allege that the City's comments so prejudiced the jury that a mistrial was required. In support, they note that Missouri courts have long recognized that it is highly inflammatory and improper for counsel to refer in argument to the burden a verdict might impose on taxpayers or to suggest that a verdict for plaintiff will cause taxes to go up. *See e.g. St. Louis Housing Authority v. Barnes*, 375 S.W.2d 144 (Mo.1964); *Jones v. Kansas City*, 76 S.W.2d 340 (Mo.1934); *Huggins v. City of Hannibal*, 280 S.W. 74 (Mo.App.1926); *Barnes v. City of St. Joseph*, 139 Mo.App. 545, 123 S.W. 541 (1909). Other jurisdictions are in accord. *See Annotation: Counsel's Appeal in Civil Case to Self Interest or Prejudice of Jurors as Taxpayers, as Ground for Mistrial, New Trial, or Reversal*, 93 ALR3d 556 (1979 & Supp 2001).

*Huggins* found prejudicial error in a statement by counsel during *voir dire* "to the effect that the taxpayers of the city of Hannibal would have to go into their pockets and pay the plaintiff any award or judgment that might be rendered in her favor, and that any verdict rendered by the jury would be taking the taxpayers' money...." 280 S.W. at 75. In so doing, it stated:

> Authorities innumerable support the rule that it is highly improper for counsel to state to the jury facts which did not appear in evidence as having a bearing upon the way the verdict ought to go. [citations omitted]. Certainly testimony could not have been adduced on behalf of the defendant to show that any judgment that might be rendered against it would have to be paid by the taxpayers of the city of Hannibal. The remarks of defendant's counsel were thus statements of fact which were not and could not have been brought into the record. The remarks, therefore, were extraneous to the record and improper.

*Id.* As *Jones* similarly noted, such remarks necessarily have the effect of making the jurors tax conscious and are designed "to operate upon the selfinterest of such taxpayers." 76 S.W.2d at 342. *Jones* found such an argument in the case before it had been "calculated to confuse and mislead the jury with respect to respondent's case" and affirmed the trial court's determination to grant a new trial as a result of the prejudice caused by the argument. *Id.* at 341–342.

These concerns are clearly implicated in this case. The City recognizes that references to the jurors as taxpayers are improper, but says that had the Thompsons' counsel not interrupted, it was trying to tell the jurors it was not proper to consider their status as taxpayers. Moreover, it notes *St. Louis Housing Authority* suggested that the prejudicial effect of such remarks could be cured if the judge promptly and strongly impressed the jury with the impropriety of the remark and the need to disregard it. 375 S.W.2d at 148. *Huggins* contains similar language, stating:

> The only proper remedy, if any, .... is for the court, upon objection being made, to promptly and effectively rebuke counsel so as 'to strongly impress the jury with the unfairness of the procedure, and to deter them from giving

the least weight to an argument so hostile to the pure administration of justice.' 280 S.W. at 75. The City argues that this is just what the trial judge did here when he promptly sustained the Thompsons' objection, offered remedies short of a mistrial to the Thompsons' counsel, which counsel indicated he did not believe could cure the prejudice, and directed counsel for the City to move on to another line of questioning.

While, as *Huggins* and *St. Louis Housing Authority* noted, a strong admonition to the jury to disregard the comment can be sufficient in some cases to ameliorate the prejudice caused by a reference to taxes, this is not such a case for a variety of reasons. First, unlike the cases relied on by the City, its counsel's comment here did not merely suggest that tax money would be used to pay the award, but actually appeared to suggest that the jurors taxes would be *raised* to pay the award. The greater prejudicial effect of the latter argument is self-evident.

Second, the cases cited by the City are not on point because of the way that the proceedings progressed in this case. Here, the judge did not admonish the jury that it had to ignore the appeal to its pocketbook. Rather, after sustaining the objection, the court considered the prejudice to be so serious that it took the motion for mistrial under advisement and did not ultimately deny the motion until the close of the evidence. At that point, of course, it was too late to instruct the jury to disregard the evidence, and it was far too late to cure any prejudice resulting from the comment.

Finally, here, unlike in the cases cited by the City, the effect of the error was compounded by the City's earlier comments about the condemnation process leading up to trial. Although the City's filing of an *in limine* motion to exclude evidence of negotiations and the commissioners' award shows that it knew these issues were irrelevant, and although the court sustained the motion, counsel for the City nonetheless commented on these issues to the jury without first approaching the bench and asking that the *in limine* ruling be reconsidered, until interrupted by the successful objection of counsel for the Thompsons. These comments also came right after counsel for the City said that there were many reasons that people might not want to sell their property, and that in some cases property owners are reluctant to sell because they are "greedy" and want the price to go up before they sell. While any one of these comments might not be sufficiently prejudicial in isolation so as to require a mistrial, when considered together and in juxtaposition to each other, it is evident that the appeal to the jurors' concern about their taxes could not be cured by a mere sustaining of the Thompsons' objection, and that, on these particular facts, a mistrial was required.

## III. JUROR QUESTIONING

The Thompsons also argue that a mistrial was necessary due to error in the manner in which the trial judge permitted the jurors to ask questions of the witnesses. The Thompsons acknowledge that *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 867 (Mo. banc 1993), and *Schaefer v. St. Louis & S. Ry. Co.*, 128 Mo. 64, 30 S.W. 331, 333 (1895), hold a trial judge has discretion to permit jurors to submit questions for the witnesses. But, they note, *Callahan* left open the question whether a trial judge abuses his or her discretion by actively encouraging questions from the jury. Here, they argue, that is just what the judge did.

More specifically, the Thompsons argue, while the instruction given the jurors at the beginning of the trial nominally told

the jurors that they were not encouraged to ask "a large number of questions," the judge's practice of stopping proceedings after each witness testified and providing time for each juror to write down additional questions of his or her own had the effect of encouraging questions. Moreover, the procedure was just unworkable, as by the end of the trial only those jurors who really had questions wrote anything down.

Finally, the Thompsons argue that these and other matters that caused them concern may have been avoided had the judge discussed the issue of jury questioning with counsel and set out ground rules for the practice prior to trial. They argue that the failure to do so created an uneven playing field, as counsel for the City had practiced before the judge previously and so were familiar with the jury questioning process, while counsel for the Thompsons had not had prior experience with jury questioning.

 This Court reaffirms its prior holdings that trial judges have the discretion to permit jury questioning. While excessive questions by one or more jurors of one or more witnesses should be avoided, limited jury questioning according to pre-set rules and clear guidelines may, in a particular case, assist jurors in clarifying and understanding the factual issues presented to them for decision. *Cf. Sparks v. Daniels,* 343 S.W.2d 661, 667 (Mo.App. E.D.1961) (juror questions, filtered through judge, can help clarify issues). This Court need not decide whether the alleged lack of earlier notice here or the practice here of stopping proceedings after each witness and encouraging or requiring each juror to write something on a piece of

paper constituted an abuse of the judge's discretion to permit jury questions. The Court is confident that, on remand, the judge and the parties will be able to determine in advance an appropriate alternative procedure that will be agreeable to those concerned and that will avoid pitfalls alleged to be associated with the procedure utilized in this trial.[1]

For the reasons set out above, the judgment is reversed and the cause is remanded for a new trial in accordance with this opinion.

All concur.

---

1. The Thompsons also allege errors in the admission of expert testimony. It is not necessary to reach those issues due to the decision to reverse and remand for a new trial due to the errors occurring during *voir dire.* For this same reason, the Court denies the Thompsons' motion to strike portions of the City's brief and appendix as moot.