**Bill BUTTS, and Debra Butts, Plaintiffs–Appellants,**

v.

**MISSOURI DEPARTMENT OF CONSERVATION, Defendant–Respondent.**

**No. SD 29444.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 4, 2009.

Rehearing Denied Nov. 30, 2009.

Application for Transfer Denied
Jan. 26, 2010.

Thomas G. Morrissey, Springfield, MO, for Plaintiffs–Appellants.

David A. McAllister, Jefferson City, MO, for Defendant–Respondent.

DON E. BURRELL, Judge.

Bill Butts ("Bill") and his wife, Debra Butts ("Debra") (collectively "Plaintiffs"), brought claims for personal injury and loss of consortium, respectively, against the Missouri Department of Conservation ("Defendant"), alleging Bill suffered physical injuries when he tripped in the dark over a chain Defendant had negligently placed between two poles. After a jury trial, the trial court accepted the jury's verdict and entered a judgment in favor of Defendant. Plaintiffs now appeal, alleging prejudicial error occurred when the trial court overruled their objection to defense counsel's reference to taxpayers in his closing argument on the grounds that the ruling constituted a misstatement of the law, allowed a reference to facts not in evidence, and condoned an improper appeal to each juror's self-interest as a taxpaying citizen.[1] Because Plaintiffs' counsel was the first attorney to address, in closing arguments, the potential impact any verdict for Plaintiffs might have on taxpayers, and because the issue of whether any juror would be susceptible to being improperly influenced by his or her own self-interest as a tax-paying citizen was effectively addressed in *voir dire*, we affirm the judgment.

### Factual and Procedural Background

Defendant controls public fishing access to Lake Taneycomo at the Shepard of the Hills fish hatchery. The particular portion of the area at issue is open to the public both day and night. In 1991, to keep private vehicles from entering an area where vegetation had been planted to protect the lake's riparian zone, Defendant placed two posts at its entrance and hung a chain between them. A "no parking" sign was then attached to one of the posts.

About fourteen years later, at about 5:30 a.m., Bill, Mike Crocker, and John Smallwood arrived at the Shepard of the Hills hatchery to go fishing. Bill had fished

---

1. Plaintiffs' appeal actually challenged the trial court's denial of their motion for new trial. At oral argument, however, both parties conceded that the actual issue was the trial court's overruling of Plaintiffs' objection to Defendant's closing argument. The only relevance of the ruling on Plaintiff's' motion for new trial was that the motion included this claim of error and thereby preserved it for our review.

from that area many times and knew that the posts were always there and that the chain was often stretched between them. It was still dark outside when they arrived, and although Bill carried a small flashlight with him, he did not use it as he walked toward the access area. There was a light that illuminated the walkway, so he said he did not need the flashlight to see where he was going. As Bill walked to the steps leading toward the water, he felt what he thought was maybe "just a stick or a limb or something" against his leg and tried to hop over it. What he actually felt was the chain, and instead of clearing it, Bill fell over it, landing on and injuring his elbow. Bill testified that he would have seen the chain if he had used his flashlight. Bill's injury required a surgical repair, and his claim included $36,483.45 in past medical expenses as well as $10,000 for future medical expenses.

Plaintiffs now argue on appeal that a portion of defense counsel's closing argument was improper and prejudicial, in that it "was designed to operate on the self-interests of the jury as taxpayers" and that the trial court therefore erred in overruling Plaintiffs' objection to it.

■ The trial court's ruling "must be evaluated in the context of the case as a whole." *See Carter v. Liberty Equipment Co., Inc.,* 611 S.W.2d 311, 316 (Mo.App. W.D.1980). In evaluating the effect of defense counsel's argument within the context of the case as a whole, the following portions of the trial must be considered.

### Voir Dire

During the jury selection process, Plaintiffs' counsel and a member of the *venire, Venireperson* Gyger, engaged in a long colloquy about fairness. That colloquy ended with the following statement by *Venireperson* Gyger about excessive verdicts:

> ***VENIREPERSON* GYGER:** ... And I don't think it's fair for even, you know, States or federal governments, or all that, to have to blunt [sic] the debt for something like that in a—in a large amount, because all of us have to pay for something like that.

> **PLAINTIFFS' COUNSEL:** Okay. Do—how do you think that would affect you sitting on this jury knowing that we are suing—suing on behalf of [Plaintiffs]?

> ***VENIREPERSON* GYGER:** I would say that I would have to see the facts.... But when compensation is awarded it should be fair and just. But it should not be some type of an outlandish type of incident either.

> **PLAINTIFFS' COUNSEL:** When you—when you would—if you are sitting on a jury and the Court's going to instruct you that the only thing that you can consider when you determine the amount is the amount that it would take to compensate, or reimburse, or make up for the harm and the event and any future harm that would come from that.

> You are not supposed to consider the fact that it's a State agency, and—and supposedly the taxpayers are going to have to bear the brunt of that, would you be able to make the decision—what problems would you have making your decision by sitting [sic] all that aside?

> ***VENIREPERSON* GYGER:** As far as the agency goes, I don't have a problem sitting [sic] it aside. I would have to know, though, ongoing treatment, ongoing medication.... [2]

**2.** *Venireperson* Gyger was later struck for cause and hardship and did not become a member of the jury.

Once the matter of a potential verdict's effect on taxpayers had been raised by *Venireperson* Gyger, Plaintiffs' counsel continued to address the issue, eliciting the following responses from other panelists:

> PLAINTIFFS' COUNSEL: [W]ho leans more the other way?
>
> *VENIREPERSON* MILTON: ... I think that we're—our society is way too litigious. I think we need to take more personal responsibility. Um, when I see some of these cases, the awards. And when you use the term that supposedly the government or the taxpayers will pay it, that's really where the money comes from, the taxpayers.

Subsequently, in his portion of the *voir dire* questioning, defense counsel asked the panel the following question: "And I would hope, and I would ask, does everyone—every juror understand that [Defendant], State agency, funded by taxpayer dollars, is entitled to the same consideration as [Plaintiffs]?" In response to defense counsel's question about the panelists' ability to be fair to Defendant, *Venireperson* Milton referred to taxpayers, stating,

> I could [be fair]. . . . But in this example I think the evidence would have to be so far over where [sic] almost gross negligence from the conservation side, because our conservation department, um, of the two choices are going to be if they end up losing the case, then, yes, the taxpayers will pay it or our conservation department will be forced to start closing down areas that we, the public, get to use when things like this happen. [3]

Neither party lodged any objection or sought any relief from the court when any of these statements were made by the panelists during *voir dire* nor made any objection to any of the questions that elicited them.

### Closing Arguments

Once *voir dire* had concluded, the subject of "taxpayers" did not come up again until Plaintiffs' initial closing argument. In that argument, counsel for Plaintiffs said,

> Sympathy isn't in here. Sympathy isn't in the instruction. We don't want sympathy. But we want to play by the same rules. We don't want you to make your decision based on sympathy for *your department,* the Conservation. We don't want you to base your decision based on where it's going to come from.
>
> And the judge doesn't either. *And the defense attorney would agree,* you are not to consider outside influences. So when you consider that, if somebody—if somebody is back there saying, much like I believe Mr. Gyger might have told us, *well, if you do then our taxes are going to go up.*
>
> You say, wait a second. We're not arguing to outside influences. All we can do is consider the harm and what it would take to reimburse that harm. (emphasis added)

With all of the foregoing as context, and in response to Plaintiffs' initial closing argument, defense counsel's argument included the following statement:

> Folks, this isn't a case—this isn't a kind of mishap that—and I'll tell you, you're the department—you're the Department of Conservation, and we're proud to call you the Department. Should be responsible for it.

---

**3.** Venireperson Milton was later struck for cause and did not become a member of the jury.

Defense counsel, as had Plaintiffs' counsel, again referred to the Department as "your Department," then argued,

> Just because [Plaintiffs' counsel]'s *pulling these numbers out of the air* doesn't mean that that's what the damages are. You got—you got the, uh, bills that are on that board. And, uh, *the rest of it is just numbers out of the air. Taxpayers* shouldn't have to pay for *just these extraordinary numbers out of the air.* (emphasis added).

In response to this argument, Plaintiffs' counsel's objection was,

> Judge, I'm going [to] object. Once again, [Defendant's counsel] is interjecting an improper source. And he's misstating the law to this jury. And he's also making a["]gold rule["] argument that *the jury is going to be the one paying this, uh, judgment.*

> There's no evidence of that whatsoever in this case, and that's *completely* improper argument. (emphasis added).

### *Analysis and Decision*

■ "Deference is given to the better position of the trial judge to evaluate the prejudicial effect of the overall tenor of the closing argument." *Henderson v. Fields,* 68 S.W.3d 455, 471 (Mo.App. W.D.2001). "[D]iscretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion." *Anglim v. Mo. Pac. R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992). Thus, the question for this court is whether the trial court abused its discretion in overruling Plaintiffs' objection. *See Kansas City v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Arrington v. Goodrich Quality Theaters,* 266 S.W.3d 856, 860 (Mo.App. S.D.2008) (quoting *Anglim,* 832 S.W.2d at 303). "Only when an appellate court is convinced from a totality of the circumstances that the right to fair trial and the integrity of the jury process has been impaired should the trial court be found to have abused discretion." *Id.* at 306.

■ As earlier noted, Plaintiffs did not lodge any objections during *voir dire* to any of the questions or answers that dealt with a potential juror's ability to render a fair verdict even if he or she believed that the funds used to pay any such verdict would ultimately have to come from taxpayers. Plaintiffs challenge the trial court's overruling of their objection to the statement about taxpayers made by defense counsel during closing argument—an area that "rests largely within the sound discretion of the trial court and its rulings in this area will not be disturbed on appeal, absent a clear showing of an abuse of discretion." *St. Louis Southwestern Ry. Co. v. Federal Compress & Warehouse Co.,* 803 S.W.2d 40, 45 (Mo.App. E.D.1990). "In closing argument, counsel is afforded wide latitude to suggest inferences from the evidence and the trial court similarly has broad discretion to determine if a particular line of argument is proper." *Carter,* 611 S.W.2d at 315.

■■ Though "[c]ounsel may not properly go beyond the issues and urge prejudicial matters in closing argument[,]" *Henderson,* 68 S.W.3d at 470, "[a]rguing a matter outside the submitted issues, however, does not constitute per se ground for the granting of a new trial." *Id.* at 471. Rather, "[i]n the exercise of its discretion

the trial court is in the best position to appraise the consequence of argument and the appellate court may intervene only if it concludes that the trial court has abused that discretion." *Carter*, 611 S.W.2d at 315. "Deference is given to the better position of the trial judge to evaluate the prejudicial effect of the overall tenor of the closing argument." *Henderson*, 68 S.W.3d at 471 (quoting *Giddens v. Kansas City Southern Ry. Co.*, 937 S.W.2d 300, 309 (Mo.App. W.D.1996)). "In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record rather than in isolation." *Titsworth v. Powell*, 776 S.W.2d 416, 422 (Mo.App. E.D.1989).

■ In the instant case, Plaintiffs have failed to show that defense counsel's argument that "[t]axpayers shouldn't have to pay for just these extraordinary numbers out of the air," was prejudicial or influenced the jury's verdict in any way. Plaintiffs are correct in asserting that it is settled law that remarks that the verdict must be paid by taxpayers "have the effect of making the jurors 'tax conscious'" and "operate upon the self-interest of such taxpayers," *City of Springfield v. Thompson Sales Co.*, 71 S.W.3d 597, 600 (Mo. banc 2002) (quoting *Jones v. Kansas City*, 76 S.W.2d 340, 342 (Mo.1934)). However, we believe that the instant case is distinguishable from the situation present in *Thompson Sales* in several important respects.

*Thompson Sales, supra*, was a case in which the city of Springfield was using its power of eminent domain to acquire real property owned by an automobile dealership. *Thompson Sales*, 71 S.W.3d at 598.

Both the city and the dealership rejected the property valuation set by three condemnation commissioners and requested a jury trial. *Id.* at 598. During *voir dire*, counsel for the city told the panel,

> Now there may be somebody on the panel that feels like well, look, if I award [the dealership] this money, *my taxes might go up as a—*

*Id.* at 599 (emphasis added). The dealership immediately objected and asked for a mistrial. *Id.* The trial court sustained the objection in open court, denied the request for a mistrial, and directed the city to move to a different line of questioning. *Id.* at 599–600.

Here, unlike *Thompson Sales*, the taxpayer issue was raised by a *venireperson*, not a party, and the possibility that jurors might act in their own self-interest instead of in accordance with the law was then addressed in *voir dire*. Any panelists who indicated any hesitation about their ability to set their own interests aside and render a verdict based solely on the law and the evidence were thereafter eliminated from the pool of eligible jurors.[4]

The city's remark in *Thompson Sales* "did not merely suggest that tax money would be used to pay the award, but actually appeared to suggest that the jurors taxes would be *raised* to pay the award." *Id.* at 601 (emphasis in original). In the instant case, defense counsel's references to taxpayers was to taxpayers in general; he did not argue—as asserted by Plaintiffs' counsel in his objection—that the taxes of these particular jurors would have to be increased to pay for any judgment they might award. While defense counsel's ref-

---

4. All of the *venirepersons* who made any reference to taxpayers having to bear the burden of such verdicts, Milton, Gyger, and Cupp, were struck for cause by the trial court at the request of Plaintiffs. *Venirepersons* Williams, Zimmerman, Shollenbarger, Gross, Darby, Daniels, and Case, were struck for cause by the court at Plaintiffs' request because they said they would go into the case favoring the Department of Conservation and stated that their minds could not be changed.

erence to taxpayers was regrettable, he did not argue that the jury should enter a verdict for Defendant in order to prevent its members from having their taxes raised. Instead, the thrust of defense counsel's argument was that the dollar amounts Plaintiffs were seeking, apart from the medical bills incurred by Bill, were "numbers out of the air" and that "[t]axpayers shouldn't have to pay for *just these extraordinary numbers out of the air.*" Plaintiffs' objection that the argument was "completely" improper claimed too much. Rather, defense counsel's (perhaps invited, but nevertheless unwise) reference to "taxpayers" was coupled with the non-objectionable argument that a portion of the monetary damages being sought by Plaintiffs was not supported by the evidence.

As recognized by our Supreme Court, "a strong admonition to the jury to disregard the comment can be sufficient in some cases to ameliorate the prejudice caused by a reference to taxes...." *Thompson Sales, supra,* at 601 (citing *Huggins v. City of Hannibal,* 280 S.W. 74, 75 (Mo. App.St.L.D.1926) and *St. Louis Housing Authority v. Barnes,* 375 S.W.2d 144, 148 (Mo.1964)). In the instant case, such an admonition was actually given by Plaintiffs' counsel himself (in a form presumably acceptable to him) when he made the following statement during *voir dire:*

> [T]he Court's going to instruct you that the only thing that you can consider when you determine the amount is the amount that it would take to compensate, or reimburse, or make up for the harm and the event and any future harm that would come from that.
>
> You are not supposed to consider the fact that it's a State agency, and—and supposedly the taxpayers are going to have to bear the brunt of that[.]

Then, in his closing argument, Plaintiffs' counsel told the jury, "We're not arguing to outside influences. All we can do is consider the harm and what it would take to reimburse that harm."

Nothing in the record suggests the jurors did not follow the law exactly as requested by Plaintiffs' counsel and as directed by the trial court. Whether our ruling would be the same if there had been no opportunity for Plaintiffs to identify and strike from the jury all *venirepersons* who expressed any concern about their ability to set aside any self-interest they might have as taxpayers in rendering a verdict based solely on the law and the evidence is not before us.

Because 1) no argument was made that the jurors' own taxes would be raised if they rendered a verdict for Plaintiffs; 2) the possibility that any juror's verdict might have been influenced by his or her own self-interest as a taxpayer was effectively eliminated via the *voir dire* process; 3) Plaintiffs' counsel was the first attorney to raise the taxpayer issue in closing arguments; and 4) defense counsel's unnecessary and wise reference to taxpayers was coupled with the non-objectionable argument that most of the monetary damages being sought by Plaintiffs were not supported by the evidence, we cannot say that the trial court's overruling of Plaintiffs' objection amounted to an abuse of discretion.

■ Even if, *arguendo,* we were to find that defense counsel's argument was "completely improper," viewed in the context of the whole case, it was certainly not so plainly inflammatory as to have affected the result of the case. *See id.* at 471. This seems to us especially evident when only Plaintiffs' counsel used the phrases, "our taxes are going to go up" when following up on Mr. Gyger's *voir dire* statements and "the jury is going to be the one

paying this ... judgment" in his objection before the jury to defense counsel's argument. Defense counsel's actual statement carries little weight when viewed in the context of the statements made by the various *venirepersons* and the wording of Plaintiffs' objection. As a result, even if the trial court erred in overruling Plaintiffs' objection (a finding we do not make), there has been no showing that prejudice resulted. Plaintiffs have failed to show that the verdict would have been different if the objection had been sustained.

The judgment of the trial court is affirmed.

BATES, P.J., and BARNEY, J., Concur.